# SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1881, IN THE SIXTY-SIXTH YEAR OF THE STATE.

---

### No. 8400.

## CROWDER ET AL. v. REED.

| 80 | 1 |
|----|----|
| 143 | 213 |
| 80 | 1 |
| 162 | 179 |
| 80 | 1 |
| f171 | 50 |

PROMISSORY NOTE.—*Illegal Consideration.*—*Answer.*—To a suit upon a note and mortgage, an answer or counter-claim that the consideration was an agreement that a son of the mortgagor should not be prosecuted for embezzling the money of an express company, of which he was accused, is good on demurrer.

SAME.—It is not necessary for a defendant, who answers that a note was given to secure the suppression of a prosecution for a crime, to allege what means were used to effect the illegal purpose.

SAME.—*Pleading.*—An answer, alleging that a promissory note was executed in consideration of an agreement to suppress a prosecution for a felony, is sufficient without averring that the accused had actually committed the crime charged.

PRINCIPAL AND AGENT.—*Ratification.*—A ratification is only effectual when the act is done by a person professedly acting as the agent of the party sought to be charged as principal.

SAME.—*Instruction.*—The jury was instructed that if one transact business for the benefit of another and the principal accepts the fruits of the agency, he thereby ratifies and is bound by the acts of the agent in transacting the business. Therefore, if I. P., acting without authority, but as the friend of both parties or of either party, procured for the plaintiffs the notes and mortgage sued on, and they accepted them, they thereby ratified all that he did in obtaining the notes and mortgage, and

if he obtained them upon an agreement that the defendant's son was not to be prosecuted, then they are void.

*Held,* that this was error.

PRACTICE.—*Pleading.*—Mere uncertainty in an answer can not be reached by demurrer, if enough be stated, though indefinitely, to constitute a defence. The remedy is by motion to make certain.

SAME.—*Counter-Claim.*—The character of a pleading is not determined by the name given to it, or the relief prayed, but by its averments; hence; what purports to be a counter-claim, praying relief, which is not good as a counter-claim, but alleges facts sufficient to bar the action, is good on demurrer, as an answer.

CONTRACT.—*Consideration.*—The promise of a creditor to release a debtor from liability is a sufficient consideration.

SAME.—*Promise.*—A promise, previous to and without performance, is a sufficient consideration for a contract.

NEW TRIAL.—*Motion.*—*Evidence.*—A motion for a new trial, assigning as a. reason the exclusion of evidence, is sufficient if it designate with reasonable certainty the evidence excluded, and it should not ordinarily give at length the questions asked or the evidence excluded.

SUPREME COURT.—*Answer.*—*Demurrer.*—Where an answer is in several paragraphs, some of which are good, the judgment of the Supreme Court upon others, supposed to be bad, can not be obtained unless they are demurred to below.

EVIDENCE.—*Conversation.*—Where a party to a suit puts in evidence a conversation between the opposite party and a third person, the other party may show by other witnesses what the third person said to him in that conversation.

SAME.—*Declarations of Agent.*—The declarations of an agent made within. the scope of his agency, and while the transaction is depending, are admissible against his principal.

SAME.—*Instruction.*—An instruction not applicable to the evidence should not be given, and if it may have misled the jury, it will be fatal error.

From the Sullivan Circuit Court.

*S. Coulson* and *J. C. Briggs,* for appellants.

*J. T. Gunn* and *J. T. Scott,* for appellee.

ELLIOTT, C. J.—This action is upon a mortgage and three promissory notes executed to the appellants by the appellee.

Several paragraphs of answer require examination. The third of these paragraphs charges that the notes and mortgage were executed upon an illegal consideration, and alleges that a son of the appellee had been in the employment of the Ad-

ams Express Company for some time prior to the execution of the notes and mortgage; that appellants were sureties on the bond executed by the appellee's son, William Reed, to the express company; that William absconded; that he was charged with feloniously embezzling a large sum of money from the company; that appellants sent an agent to appellee who, to induce her to execute the notes and mortgage, represented that her son was guilty of a felony, and would be captured and sent to the State's prison, unless she would execute the notes and mortgage; that, if she would execute them, then neither the express company nor the appellants would prosecute her son; that, to save her son from prosecution, she executed the instruments, and "that said notes and mortgage were made with the express agreement that her son should not be prosecuted for the said felony."

One objection to this paragraph stated by appellants' counsel is, that it does not give the name of the agent sent by the appellants to the appellee, but leaves a blank space where the name should be. This is not such a defect as renders the answer bad upon demurrer. Unless the pleading is so utterly uncertain as to state no cause of defence at all, demurrer will not lie. The remedy is by motion. If the appellants deemed it important that the blank should have been filled, they should have made the proper motion before demurring. We do not think that it was necessary for the appellee to state with particularity that the representations were made by an agent. Where an agent rightfully acts for his principal, it is sufficient to charge the act as that of the principal without naming the agent.

Another objection urged is that the paragraph is bad because it does not allege that the son of the appellee had committed a felony. Appellants have cited several cases, but none of them have the slightest bearing upon the question here in dispute. We do not understand the law to require that it should be shown that a felony has been actually perpetrated. We understand that it is corrupt and illegal to bargain for

the suppression of a prosecution against a person charged with the commission of a crime. The welfare of society and the protection of persons and property require that individuals should not be permitted to interfere with the administration of public justice by bargaining for the suppression of a prosecution against one accused of an offence made punishable by law. An individual can not, for his own gain or benefit, make a contract which may thwart or obstruct the prosecution of offenders. *Partridge* v. *Hood,* 120 Mass. 403 ; S. C., 16 Am. L. Reg. N. S. 267 n.; *McMahon* v. *Smith,* 36 Am. R. 67. If the person who attacks an agreement made for the purpose of preventing a prosecution were required to prove that an offence had actually been committed, it would make the whole question turn upon the guilt or innocence of the accused, and thus bring in an issue which ought to be elsewhere tried and determined. So, too, would it tend to greatly weaken the beneficial operation of the rule, for money obtained upon such agreement might often be made the means of suppressing the evidence required to show the guilt of the accused. The reasonable and safe rule is to condemn all agreements for the smothering of prosecutions, where an accusation is made in good faith against the person whose immunity from prosecution the agreement is intended to secure.

The facts stated in the fourth paragraph are substantially the same as those set forth in the paragraph just discussed. The difference between the two paragraphs is, that the fourth is in the form of a counter-claim. It can not be doubted that a pleading stating the consideration of the contract which constitutes the basis of the action shows that the matter of the counter-claim is connected with and grows out of the cause of action.

The paragraph now receiving attention shows with reasonable certainty, that the notes and mortgage to which it refers are those set forth in the complaint. It is sufficient for an answer or counter claim to show with a reasonable degree of certainty, that the instruments to which it makes reference are those upon which the plaintiff declares.

Crowder *et al. v.* Reed.

Many of the objections to the fifth paragraph of the answer are the same as those urged against the paragraphs already discussed. It is, however, said of this paragraph, that it is insufficient because it does not state with proper certainty and particularity the facts constituting the defence. If the paragraph is faulty because uncertain, the remedy is not by demurrer. It would, perhaps, have been better to have stated the facts somewhat more definitely; but there is enough stated to show that the notes and mortgage sued on were executed upon an illegal consideration. It does appear that the sole consideration of these instruments was the agreement to stifle the prosecution against a person then accused of a crime.

It is not necessary that an answer, alleging that the consideration of a contract was a promise to suppress a prosecution, should also show what means were to be taken to prevent the prosecution. The contract is void because it is one which attempts to bind an individual to do an act prejudicial to the security of the community. It is not material what the course pursued, or agreed to be pursued, the contract is one which no citizen has a right to make. *Shaw* v. *Spooner*, 9 N. H. 197; *Roll* v. *Raguet*, 4 Ohio 400; *Bowen* v. *Buck*, 28 Vt. 308; *Collins* v. *Blantern*, 1 Smith's L. C., part 1, 667.

The sixth paragraph is ostensibly a counter-claim, but is in fact an answer. A pleading is to be judged by its averments. The name bestowed upon it by its author does not always determine its character. Treated as an answer, the pleading under immediate mention is good, for it sets up matter in bar of the action. Nor is the relief prayed determinative of the character of the pleading. The material facts alleged are to be looked to in determining what effect shall be assigned to a pleading, and not the formal statements. The demurrer concedes the facts stated to be true, and if true they are a complete defence to the appellants' action. The pleading before us does not attempt to set up a cause of action in favor of the appellee, but professes only to state facts

entitling her to relief against the contracts constituting the appellants' cause of action.

Counsel on both sides have discussed the seventh and eighth paragraphs of the answer, but, as they were not demurred to, no question is presented for our consideration. The sufficiency of an answer can not be questioned for the first time by the assignment of errors. If there were no good paragraphs of answer, then the case would fall within section 372 of the code of 1852, now forming section 566 of the R. S. of 1881. This provision can not, however, apply where, as here, there are several good paragraphs of answer.

Where a motion for a new trial points out with reasonable certainty the particular testimony offered and excluded, it is sufficient. It is not necessary, nor indeed proper, that the motion should recite at length the questions propounded, or rehearse the testimony proffered. The object of the motion is to point out with reasonable certainty the ruling complained of, and thus enable the trial court to review its own rulings, and to present the question to the appellate court in such a manner as that it can be properly understood and decided. While the motion must designate the particular ruling complained of, it is not necessary that there should be any detailed statement of the questions asked or evidence offered. We think the motion in this case points out with reasonable certainty the particular ruling sought to be reviewed, and that it supplies such information as fully designates the question sought to be presented for consideration.

Evidence was introduced by both parties, showing that one James B. Patton acted as a negotiator between the parties, and that he carried propositions back and forth. Appellee testified that Patton might have said something to her about signing the notes and mortgage in suit, before she signed them, but that he was not her agent. Patton stated that he was not the agent of the appellee, and that the proposition to execute the notes and mortgage came from the appellants, but that he had talked with her before the papers were executed, that he

told her that if she would execute them her son should not be prosecuted for embezzling the funds of the express company. One of the appellants testified that when he first heard of young Reed's flight, he met Patton at the express office, and supposed that he was acting for his (Reed's) family, and that he did not employ him; and that, although he afterwards talked with Patton, he did not send him to Mrs. Reed, nor give him any instructions. Another of the appellants testified that Patton was not their agent, and that the proposition to execute the notes and mortgage came from Patton. The appellants then offered to prove by the appellant Crowder what Patton said to him. This the court would not permit. We are unable to find any ground upon which this ruling can be supported. Appellee's counsel defend it upon the ground that Patton was the agent of the appellants, and that his statements to them were, therefore, not competent. This position rests upon an assumption which the appellee is not entitled to make. The question, as appears from the evidence to which we have referred, was a controverted one of fact. Patton himself says: "I was acting as the mutual friend of both parties in doing what I did." Where there is conflicting evidence upon a question of fact, the court has no right to assume that the one party or the other has established his contention. In the present instance, neither court nor counsel had a right to assume that Patton was the agent of appellants and not of the appellee. It should have gone with kindred questions to the jury.

If the assumption of appellee's counsel, that Patton was the agent of appellants were granted, their conclusion that the testimony was incompetent would not follow. An agent may be made the medium of transmitting a proposition from a person about to contract with his principal, and when he is made such a medium, the message he receives and delivers to his principal is competent evidence. An agent who receives a proposition for his principal may communicate to him the proposition received. Whether such a proposition was received by the agent, and whether by him communicated to the

principal, are questions of fact, which must always be left to the jury. The fact that an agent carries the proposition does not deprive the principal of the right to prove what the proposition was. Nor is the principal confined to the testimony of the agent alone; he may prove the proposition by any other competent witness. The character of agent is not such as to compel the principal to limit himself entirely to the testimony of the person chosen as his agent.

Conversations between principal and agent can not be testimony, unless the agent is acting as the medium of conveying a proposition from the person negotiating with the principal. A proposition may be made through an agent as well as through anybody else. The fact that he represents his principal does not unfit him from conveying a proposition from one to the other of the contracting parties.

There is still another view to be taken of this case. The declarations of an agent made in behalf of his principal while engaged in the business and within the scope of his agency, and while the transaction is still depending, are admissible against his principal. If Patton was the agent of the appellee, his declarations were competent. Whether he was or was not such agent, was a question for the jury, for there was some evidence, at least, tending to establish that fact.

The principal question between the parties was whether the consideration of the notes and mortgage was an illegal one. The excluded testimony tended to show that it was not illegal, for it tended to prove that the consideration was not the agreement to stifle the prosecution against William Reed. Upon this issue it was competent, for it was both material and relevant.

Patton had been permitted to prove what statements he had made to the appellants, and it was surely competent for them to give testimony upon the same subject and directed to the same conversations. It would violate fundamental principles to permit one party to give testimony as to a conversation and refuse to permit the other to give any testimony at all upon

that subject. The appellants can not be compelled to accept as conclusive the statements of Patton; they have a right to deny or explain them.

It is insisted by appellee's counsel that the excluded testimony was not material, for the reason that there was no consideration for the notes and mortgage, except the illegal one founded upon the agreement not to prosecute William Reed. Appellee's witnesses testified that this illegal agreement was the sole consideration, but the appellants' witnesses stated that there was a different one. It is necessary to briefly advert to the testimony upon this subject. Crawley testified that the principal part of the business with the express company was transacted in the office of Patton, that "Overmyer, the company's agent, insisted on getting his money right away. It was again suggested that Mrs. Reed would give notes and mortgage to secure the deficit. Patton said she was willing to give a mortgage for the payment of the express company. There was no agreement not to prosecute William Reed. Mr. Patton kept the notes and mortgage and would not deliver the same till the money was paid to Overmyer by us. We did not release William from a prosecution. We did not understand that the notes and mortgage were delivered to Patton as our agent. We did not release William Reed from our claim. We accepted the notes and mortgage in satisfaction of our claim as far as we had anything to pay for him. There was no other consideration than the payment of the money by us, and the release of our claim against William Reed for the amount of the notes and mortgage."

This testimony shows that there was an adequate consideration for the notes and mortgage, namely, the release of William Reed from all liability to his sureties. The promise of a creditor to release a debtor is a sufficient consideration to support a contract. 1 Story Con., section 548.

A promise for a promise is a valuable consideration. The promise to release William Reed constituted a consideration, and was one which could have been enforced. There was,

therefore, not a want of consideration. If there is a refusal to perform a promise, there may be a failure of consideration. But in this case the agreement to release became .effective as soon as it was consummated. There remained no formal or other act to be done.

The third instruction given by the court at the request of the appellee is as follows: " If a man transacts business for another, or for other persons for his or their benefit, and the principal accepts the benefit and the fruits of his agency, he thereby ratifies and adopts the agency of him who transacts the business and is bound by his acts and the legal conse- quences thereof in the transaction of such business. There- fore, if James B. Patton, acting without authority from any one, but as the friend of both parties, or of either party, pro- cured for the plaintiffs the notes and mortgages sued on, and they accepted the same, they thereby ratified all of Patton's acts in and about the procuring of said notes and mortgage, and if said notes and mortgage were given by the defendant upon the agreement or understanding that her son, William Reed, was not to be prosecuted, then the notes and mortgage are void."

This instruction is subject to serious objections. If Patton was the agent of the appellee and not of appellants, the doc- trine of ratification does not apply. If he was not avowedly acting as their agent, they can not be said to have ratified his act. The law upon this subject is thus laid down by a text- writer : " One other consideration is important to be borne in mind. It is that a ratification can only be effectual between the parties, when the act is done by the agent avowedly for or on account of the principal, and not when it is done for or on account of the agent himself, or of some third person." Story Agency, section 251*a*. In *Meiners* v. *Munson*, 53 Ind. 138, this doctrine is approved and the following statement of the rule is quoted from 1 Chitty Con. 293 : " But where the party making the contract had no authority to contract for the third person, and did not *profess*, at the time, to act for

him, it seems that the subsequent assent of such third party, to be bound as principal, has no operation." Under the evidence in this case the instruction was, upon this point, entirely too broad. If Patton was the appellee's agent and the instruction extends to both parties, for the language is " either party," the appellants, whose interests were hostile, could not be justly said to have ratified his acts by receiving and retaining what was tendered them.

The instruction leaves out of consideration the element of knowledge. If, as appellants claimed, the notes and mortgage were delivered to them in consideration that they would pay William Reed's debt to the express company and release him, they would not be bound by an act of Patton, of which they had no knowledge. This would certainly be so if he was the appellee's agent and not theirs. The instruction declares that they would be bound by a subsequent ratification whether Patton was their agent, or was the agent of the appellee, and is, therefore, plainly erroneous.

It is in general true, that a principal is not bound where the ratification is made in ignorance of material facts. *Manning* v. *Gasharie*, 27 Ind. 399. If the appellants acted in ignorance of what Patton had said to the appellee, and in good faith believed that the notes and mortgage were executed to them in consideration of their payment of the debt of William Reed to the express company, and his release from liability to them to the extent of the sum evidenced by the notes and mortgage, they can not be justly said to have ratified an illegal agreement of which they were entirely ignorant.

If there was a failure or want of consideration, then the notes could not be enforced; but this is a very different thing from an illegal consideration. If appellee received no consideration, she might successfully defend, but not upon the ground upon which the instruction places the defence. We need not here enquire whether there was a want or failure of consideration, for the instruction makes the whole case turn upon an altogether different thing—the illegality of the consideration.

The fifth instruction, given at the instance of the appellee, reads thus : " If the jury find from the evidence that the notes and mortgage were given by the defendant to the plaintiffs before they had paid the express company the amount due from William Reed as his sureties, then there was at that time no debt due from said William Reed to the plaintiffs, and the law is that a promise to pay or secure persons, if they will do what they are already bound to do by law or by contract, is without consideration, and the law will not compel the promisor to perform the agreement.   So in this case, if the jury find that the plaintiffs were already bound by their bond as sureties for William Reed to pay the express company the money he had embezzled, when the defendant executed the notes and mortgage, then there was no consideration for said notes and mortgage, and the jury should find for the defendant."

The appellants insist that this instruction is not applicable to the case made by the evidence, and did them substantial injury.   The evidence shows, and without conflict, that the notes and mortgage were signed and placed in the hands of Patton, to be held by him until the express company's claim was paid by the appellants.   Patton testified : " I held the notes and mortgage till the day of the statement by the express company, as Crowder refused to pay any money till the statement was made, and I told Mrs. Reed I would not deliver them until credit was given, and I refused to deliver them until the proper credit was given."   By other testimony the payment of the claim before the delivery of the notes and mortgage was proved.   At the time the notes and mortgage became effective, the principal debtor, William Reed, was bound to his sureties for the amount paid by them.   A principal is unquestionably liable to his surety from the moment the latter pays a debt which it was the duty of the former to pay. The rule declared in the instruction is not applicable to such a case as the present.   It was likely to mislead the jury, and we can not say that it did not do harm.

There was no evidence that at the time of the delivery of

the notes and mortgage the appellants were paying their own debt, for that was already paid; but the debt of their principal remained due to them.    The part of the instruction, which addresses the general rule to the particular case, is clearly erroneous.    The fact, that the appellants were bound to pay what they had already paid, did not prevent them from taking security for repayment.    Indeed, the law is, that if they had been mere volunteers, they could not have had a claim against any person for reimbursement.    The court had no legal right to tell the jury, that if the appellants were already bound " by their bond, as sureties for William Reed, to pay the express company the money embezzled, when the defendant executed the notes and mortgage, there was no consideration for the notes."    We have seen, in examining the ruling excluding testimony, that there was evidence that the consideration of the notes and mortgage was the release of William Reed from liability.    The court invaded the province of the jury in assuming that there was no consideration for the notes and mortgage except the agreement of appellants to pay their own debts.    An instruction, which assumes a fact upon which the evidence is conflicting, is erroneous.

If the sole consideration of the notes was the agreement of the appellants to pay their own debt, then there was an entire want of consideration.    A promise to do what the person promising is under a legal obligation to do, is not a valid consideration.    If, in this case, the sole consideration of the notes sued on was the promise of the appellants to pay the amount due from them as the sureties of William Reed, the defence of want of consideration would prevail; but, if the consideration was his release from liability for the debt, then there would not be a want of consideration.    Parsons says: " A promise is a good consideration for a promise.    And it is so previous to performance and without performance."    1 Pars. Con. 448.    This rule has been approved by our own cases. *Downey* v. *Hinchman,* 25 Ind. 453; *Clodfelter* v. *Hulett,* 72 Ind. 137.    An agreement to release from liability is such a

consideration as will support a contract. *Millard* v. *Porter,* 18 Ind. 503; *Henry* v. *Ritenour,* 31 Ind. 136.

It is true that the appellants had a right to contract with appellee to reimburse them for the money paid by them as the sureties of her son. There is nothing illegal in securing the refunding of money which sureties have been compelled to pay because of an embezzlement by their principal. It is, however, illegal to contract for suppressing the prosecution of the embezzler. If two considerations, one legal and the other illegal, are so blended that there can not be a separation, the entire consideration will be deemed bad, and the contract fail. We think the sixth instruction given at the request of the appellee substantially expresses these propositions, and is not justly subject to the criticisms made upon it.

Judgment reversed.