SHEPHERD, C. J., dissents in part.
The public has a right to some better test of the capacity of their servants than the fact that they possess the means of purchasing their offices. The Code, sec. 1871, provides: "All bargains, bonds and assurances made or given for the purchase or sale of any office whatsoever, the sale of which is contrary to law, shall be void." Notwithstanding the office is an office under the United States government, if an action were brought in our courts to recover upon a bond or mortgage given for such consideration, our courts would hold it void. Such agreements are void at common law, as well as by statute. So also contracts to procure appointments to office are void (Mechem on Public Officers, sec. 351); or to resign office in another's favor. Ibid., sec. 357; Meacham v. Dow, 32 Vt. 721; Gracone v.Wroughton, 11 Exch., 146. *Page 311 
Public offices are public trusts, and should be conferred solely upon considerations of ability, integrity, fidelity and fitness for the position. Agreements for compensation to procure these tend directly and necessarily to lower the character of the appointments, to the great detriment of the public. Hence, such agreements, of whatever nature, have always been held void as being against public policy. Maguire v. Comine,101 U.S. 108; Tool Co. v. Norris, 2 Wall., 45; Gray v. Hook, 4 N.Y. 449;Gaston v. Drake, 33 Am. Rep., 548; Filson v. Himes, 47 Am. Dec., 422; Faurie v. Morin, 4 Martin (La.), 39; Liness v. (458)Hessing, 92 Am. Dec., 153. Says Ames, C. J., in Eddy v. Capron, 67 Am. Dec., 541: "By the theory of our government, appointments to office are presumed to be made solely upon the principle detur digniori, and any practice whereby the bare consideration of money is brought to bear in any form upon such appointments to or resignation of office conflicts with and degrades this great principle. The services performed under such appointments are paid for by salary or fees, presumed to be adjusted at the point of adequate remuneration only. Any premium paid to obtain office interferes with this adjustment and tempts to peculation, overcharges and frauds in the effort to restore the balance thus disturbed." Besides, the moral sense revolts at traffic to any extent in the bestowal of public office. It is against good morals as well as against the soundest principles of public policy. If public offices can be sold or procured for money, the purchasers will be sure to reimburse themselves by dispensing the functions of their offices for pecuniary consideration. The law wisely guards against the first step in that direction. For that reason, not only the sum agreed to be paid directly to the holder of this office to resign, but the amounts advanced for expenses and compensation of persons to go to Washington to procure the authorities there to accept the resignation of one party and the appointment of the other, are not recoverable. For the same reason that agreements to pay for lobbying the passage of bills before a legislative body are void (Lawton on Contracts, sec. 309, and Mechem on Officers, sec. 360, and cases cited), all agreements for expenses and compensation of persons seeking to influence or procure appointments to office are void. Lawton, supra. sec. 310. "The courts condemn the very appearance of evil, and it matters not that in a particular case nothing improper was done or expected to be done. It is enough that the employment tends directly to such results."Clippinger v. Hepbaugh, 40 Am. Dec., 519; Wood v. McCann, 6 Dana (Ky.), 366; Mills v. Mills, 100 Am. Dec., 535, and numerous (459) other cases cited in notes to Mechem on Officers, sec. 360; Lawton, supra, sec. 311, and cases cited.
If an action had been brought to recover these sums, or to foreclose a mortgage given to secure payment thereof, the Court would dismiss the15470 *Page 312 
action. The defendant contends, however, that as he was careful to take a mortgage with a power of sale, the courts will not interfere by injunction, but will let him proceed to collect his ill-gotten gains. This would simply legalize the practice which is denounced both by statute and common law. Reasons of public policy forbidding this species of corruption are too profound and too important to the public welfare to be evaded and nullified by so simple a device. A mortgage given to secure a sum of money upon an agreement against public policy is void. The Code, sec. 1871; Teal v.Walker, 111 U.S. 252; Wildey v. Collier, 7 Md. 275; Crowder v. Reed,80 Ind. 1. The sale under a void mortgage would be a cloud on the title, and an injunction lies, especially when the invalidity does not appear upon the face of the mortgage, but requires extrinsic evidence to prove it. 1 High on Injunc., sec. 469; Yager v. Murkle, 26 Minn. 429. In cases where the consideration is immoral the deed will be set aside. 2 Addison Cont., 716.
Pomeroy Eq. Jur., sections 939, 940, 941, 942, calls attention to the fact that the rule in pari delicto is often misunderstood, and its application is properly and correctly that in such cases "potior estconditio possidentis" — that is, that the Court will permit nothing to be done which will enable a party to collect from the other the fruits of his wrong. When he sues to recover, the law will not give him judgment. When he has shrewdly attempted to evade this by taking a mortgage with a power of sale, the court will, by injunction, prevent his collecting on a mortgage denounced as void by reasons of public policy. In sec. 941 he says: "Whenever public policy is considered as advanced by (460) allowing either party to sue for relief against the transaction, then relief is given to him. In pursuance of this high principle, and in compliance with the demands of a high public policy, equity may aid a party equally guilty with his opponent, not only by canceling and ordering the surrender of an executory agreement, but even by setting aside an executed contract, conveyance or transfer, and decree the recovery back of money paid or property delivered in performance of the agreement." Also, in section 940, he says that whenever the defensive remedy at law will not be equally certain, perfect and adequate, the equitable remedy will be granted by injunction and the like. "The equitable relief so conferred does not violate the general maxim concerning parties in pari delicto; on the contrary, it carries that maxim into effect." So, in the present case, the injunction against sale under the void mortgage taken against public policy enforces that maxim by prosecuting either party recovering anything from the other. This is also the well-settled rule in England. In Lloyd v.Gordon, 2 Swan, 181, Lord Eldon granted an injunction to restrain the negotiation of bills of exchange which were made void by Stat. 9 Anne, ch. 14, which is in the *Page 313 
very tenor of section 1871 of The Code applicable to the present transaction. Lord Hardwicke granted the injunctive relief in a similar case. Smith v. Aykwell, 3 Atkins, 566, and the Vice-Chancellor in Earl ofMilltown v. Stewart, 3 Simons, 371, which was affirmed by Lord Cottenhan, 
3 M. and C., 18.
In such case, before the Master of the Rolls, Sir John Romilly, where part of the consideration was for money loaned and part was for an immoral consideration, the whole mortgage was ordered to be canceled, the Court declining to pass upon the question whether the mortgagee could recover at law for the valid part of the consideration, i. e., the money loaned. Willyams v. Bullmore, 33 L. J. R. (Eq.), N.S., 461. In the present case, upon the defendant's own showing, $37,50 is the only valid part of the sum attempted to be secured. Whether the mortgage can be upheld to that extent is not before us, as the (461) plaintiff in his reply expresses his willingness to pay said sum. The plaintiff recovering judgment for the cancellation of the mortgage, the defendant should be taxed with the costs. The injunction was properly continued to the hearing.
Affirmed.