A. M. BASKET et al. v. JOHN R. MOSS.

*Illegal Contract—Sale of Office—Agreement to Procure Appoint-
ment of Another to Office—Mortgage to Secure Void Contract—
Injunction.*

1. Traffic in public offices is against good morals and contrary to public
   policy.
2. Not only an agreement by A to pay to B, a public officer, an amount
   equal to the emoluments of the unexpired term of his office, in
   consideration of his resignation and his influence to secure the
   appointment of A to the office is void, but likewise an agreement
   to compensate anyone for, or to pay the expenses of anyone in,
   attempting to secure the appointment.
3. A mortgage given to secure an agreement connected with the traffic
   in public office being void, an injunction will lie to restrain a sale
   thereunder. (SHEPHERD, C. J., dissents.)

SPECIAL ACTION, begun by summons and heard by *Bynum,
J.,* at February Term, 1894, of VANCE Superior Court, after
notice to defendant upon the plaintiffs' application to restrain
the defendant W. E. Moss, trustee, from the sale of certain
real estate described in the affidavits.

The affidavit on which the application was founded, after
setting forth that the defendant John R. Moss was postmas-
ter at Henderson on the 1st of September, 1893, and that the
full term to which he had been appointed expired on 1st
March, 1894, stated—

"3. That on or about the 1st day of September, 1893, the
defendant John R. Moss, as affiant is informed and believes,
represented to the plaintiff A. M. Basket, who is an old man
and easily influenced, that he, said John R. Moss, could pro-
cure for said Basket the appointment of postmaster at Hen-
derson, N. C., as his successor; and represented further to
said Basket that if he would secure to him, said J. R. Moss,

the sum of $972.50 (which sum was to be evidenced by the bond of said A. M. Basket) by a deed in trust on his (said Basket's) real estate in Vance County, that he, said John R. Moss would sell and deliver to him, said A. M. Basket, the unexpired term as postmaster, would go to Washington City, see the President and other proper authorities, resign said office in favor of A. M. Basket and surrender the office to him, and secure the appointment of said Basket as postmaster in his stead, stating as a further inducement for the execution of said bond and trust deed, that if said A. M. Basket should be appointed and hold the office at the expiration of the term of said Moss, Mr. Cleveland would no doubt reappoint him.

"4. That the said A. M. Basket, who is an old man, and who is easily influenced, relying upon the representations and inducements made and held out to him by said John R. Moss, as affiant is informed and believes, did, on the 1st day of September, 1893, execute to said J. R. Moss his bond for $972 50, and at same time executed to W. E. Moss, the other defendant named therein, a deed of trust on a tract of land situate in Vance County, N. C., containing 125 acres, more or less; that said deed of trust was duly registered in Vance County.

"5. That of the real estate conveyed in the said trust deed a large portion thereof belonged to this affiant, Joseph Basket, he having paid out of his own funds a large part of the purchase-money, though the deeds are not in his name.

"6. That said bond and trust deed were executed without consideration, or upon a consideration which was illegal, and that said bond and trust deed are invalid.

"7. That affiant is informed and believes that it was a part of the agreement when said bond and trust deed were executed, that if, upon the visit of John R. Moss to his Excellency, Grover Cleveland, at Washington City, he should fail to have said Basket appointed postmaster as aforesaid, the

115—29

said bond and trust deed should be cancelled and surrendered, the said A. M. Basket to pay the actual expenses of said Moss. It was also understood that the said trust deed should not be recorded until the said Moss should find whether he could succeed in his promises.

"That affiant is informed and believes that this part of the agreement also is based upon a consideration which is void in law and renders said agreement invalid.

"8. That no part of the agreement (which affiant claims was invalid so far as the promising the office of postmaster for A. M. Basket is concerned) has been complied with by said Moss.

"9. That defendant has endorsed on the said trust deed these words:

"'This mortgage has been paid off and satisfied down to one hundred and ninety-nine dollars, which is the true balance due thereon, October 31, 1893.        JOHN R. MOSS.

"'Witness: T. S. EATON, R. D.'

"10. That affiant is informed and believes that there is nothing due on said bond on account of its invalidity.

"11. That notwithstanding that said bond and trust deed are invalid, and that there is nothing due on said bond, and that defendant has not complied with his agreement in any respect under which same were executed, the said defendant John R. Moss has caused his codefendant W. E. Moss to advertise the said real property for sale under said invalid deed on the 26th day of February, 1894, to pay an alleged balance of $199 claimed as due on said invalid bond."

The prayer was for a restraining order, etc.

The defendants filed their affidavits and exhibits in opposition to the granting of the relief asked by the plaintiffs, as follows:

BASKET v. MOSS.

" The defendants, answering the plaintiff's application for a restraining order in this action, say—

" 1. They say that the said John R. Moss was appointed postmaster at Henderson for four years from the ____ day ____, 1890, and until his successor should qualify, and that he was duly confirmed, and they are informed and allege that he could not be removed during his term except for good cause.

" 2. The allegations of section three of the application are untrue except as the same are hereinafter admitted and explained.

" 3. They admit the execution of the bond and mortgage, or trust deed, but deny that said Moss induced said Basket to execute them.

" 4. The allegations in sections 5, 6 and 7 and so much of section 11 as allege the invalidity of said bond and mortgage and irreparable injury to plaintiffs by reason of a foreclosure sale are untrue, and the truth in regard to said allegations is correctly hereinafter set out, to-wit:

" 1. That plaintiff A. M. Basket is about sixty years of age, in good health and active in body and mind. He has for years been possessed of an inordinate desire for office, and was in 1892 the Democratic candidate for Treasurer of Vance, and made a very active canvass and received the full party vote. Failing in this, he, in the year 1893, became a candidate for postmaster at Henderson (some others did also), and the said Basket engaged the services of A. R. Wortham, an attorney, to manage his candidacy, and also applied to this defendant J. R. Moss to resign in his favor. He was informed what the emoluments of the office were for the unexpired term of the defendant. The said W. E. Moss was a clerk in said postoffice, and was informed by this defendant J. R. Moss, that several parties pressing their claims and seeking his removal, it was likely that he might be removed for political reasons, or at any rate not be reap-

pointed, and that he would if he could resign in said Basket's favor, if said Basket would continue the emoluments and fees for the remainder of said Moss' and his clerk's term, since it would take about that length of time for said Basket to become acquainted with the duties of the office.

" 2. Thereupon said Basket pressed this defendant to go to Washington, in company with said Basket's attorney, and endeavor to procure his appointment upon said terms, and, at the instance of said Basket, a paper was written and executed by the parties, which is hereto attached and prayed to be taken as a part of the answer to this application, and the said Basket, at the same time, executed the deed in trust referred to, and the note. It is true, as therein stated, that said Basket then owed defendant J. R. Moss the $37.50 mentioned in said paper, and still does, and it was understood between the parties at the time that the said $60, by said agreement stipulated to be paid for the services of Mr. Wortham, should be secured to this defendant J. R. Moss, by whom said $60 was or had been previously advanced by said Wortham.

" 3. Pursuant to the said agreement, the said Moss and Wortham did go to Washington upon the business named, and, in good faith, endeavored to induce the authorities there to appoint said plaintiff postmaster at Henderson; but they failed to accomplish the purpose of the trip, and promptly thereafter, to-wit, on October 31, 1893, credited said bond and mortgage with $773.50, being all thereof except the $60, $37.50, $100 and $1.50 for recording the mortgage, and the said Basket was present at the crediting of said mortgage, and admitted that $199 was the correct and true balance due thereon, as it was, and often promised to pay the same, at the same time claiming that the $100 for traveling expenses to Washington was too high, and should not have cost more than $37.50 each, or $75 instead of $100.

" 4. About October 31, 1893, these defendants discovered that, notwithstanding the covenant of warranty of owner-

ship in fee set forth in said trust deed, the plaintiff A. M. Basket had, in 1881, conveyed said tract of land to his late wife, and she dying several years thereafter, the title descended upon their son; the plaintiff Joseph Basket, and that the only interest A. M. Basket has in it (unless his said conveyance to his wife was fraudulent, as these defendants believe it was and is) is an estate for his own life, as tenant by the curtesy.

"5. The plaintiff A. M. Basket was, as these defendants allege on information and belief, the owner in fee of said land, having bought and paid for it with his own money when his son Joseph was a child, or unborn, and conveyed it to his wife in 1881, as aforesaid, as these defendants allege on information and belief, voluntarily and without consideration, and that the said Joseph Basket never paid one dollar of the purchase-price thereof, but that the said A. M. Basket, being involved in debt, and with the purpose and desire to avoid his obligations, either past or future, or to put his said son in a position (as he erroneously supposed) that would enable him to contest the debt of this defendant, fraudulently conveyed all his property to the said Joseph Basket, without any sufficient consideration, and it is upon this pretended claim that the said Joseph at this time comes up to plead his father's alleged corruption as an irreparable financial injury to himself.

"6. And this defendant, J. R. Moss, says further, that if, as alleged by the plaintiffs, the obligation of said A. M. Basket to this defendant, evidenced as alleged, is illegal and invalid for want of a legal or moral consideration to support it, the said plaintiff is *in pari delicto*, and that this Court can give him no relief in the premises if, as alleged, the contract is immoral and illegal, because, as appears from his application and this affidavit and exhibits, no cause of action arises in his favor; and these defendants have his executed conveyance and by virtue of the time-honored maxims of equity are in the better position.

" 7. These defendants utterly repudiate the suggestion that the plaintiff was duped or persuaded into the arrangement referred to, but says that he urged the arrangement of his own head and imagination, and they say that, whether under administrations past or present, or those that are to be, they believe that there cannot be found a more eager, or earnest, or determined officeseeker than the plaintiff; and while his son, the coplaintiff, had nothing to do with the contract sued on, in so far as these defendants knew, yet they believe that he did second and aid with all his might his father's candidacy.

"Wherefore, this defendant prays that this honorable Court will leave the parties where it found them—to themselves.

. " JOHN R. MOSS."

T. T. Hicks, being duly sworn, says he wrote the entry on the margin of the mortgage in this case in the presence of A. M. Basket and J. R. Moss, being then about to take a subsequent mortgage; that said Basket stated that the balance then due was only $130, and Moss stated that this $130 did not include fee due Mr. Wortham—and said Basket then and there recalled the said $60 and admitted its correctness, and the entry was made accordingly, and witnessed by the Register of Deeds, who heard the above.      T. T. HICKS.

The following was the agreement referred to in the affidavits :

" The said A. M. Basket has proposed to John R. Moss that if he, A. M. Basket, could induce the President to appoint him postmaster at Henderson, N. C., that he desired said John R. Moss to resign in his favor.  The said John R. Moss has agreed to do so under the following conditions:

" 1. Basket is to secure to John R. Moss the amount of his salary up to the time his commission as postmaster expires, the amount of which is $575.

" 2. To secure the amount of $200, his clerk hire, up to the time his commission expires.

" 3. To secure to John R. Moss $100 as expenses to Washington City and for the pay of a clerk to take said Moss' place in the postoffice during his absence ; said Moss to take along with him A. R. Wortham to assist him, etc., paying his expenses out of the $100 allowed.

" 4. To secure to John R. Moss the sum of $37.50, money heretofore lent to said A. M. Basket.

" 5. To secure in said deed in trust $60, and the said W. E. Moss is to pay this sum in settlement of the trust to A. R. Wortham or his assigns. All of which is included in the amount of the bond executed this day by A. M. Basket to John R. Moss.

" If the President should fail to appoint Basket as postmaster upon Moss's resignation, then the sum of $575, and the sum of $200 is to be subtracted from Basket's bond, leaving him nothing to pay except the items of $100 allowed for expenses, $60 to A. R. Wortham and $37.50 of personal debt now existing and owing by Basket to Moss. We, and each of us, are bound by the above obligation, and bind ourselves in good faith to carry it out with no afterclaim upon each other.                         A. M. BASKET,

                                        " W. E. Moss,

                                        " JOHN R. Moss."


                    " HENDERSON, N. C., September 1, 1893.
" $972.50.

" Ninety days after date, with interest from date at rate of eight per cent., I promise to pay to the order of John R. Moss, nine hundred and seventy-two dollars and fifty cents for value received, the said sum being secured by first deed in trust upon real estate of even date with this bond.

                              " A. M. BASKET.   [SEAL.]
" Witness : E. A. POWELL."

BASKET *v.* MOSS.

Basket executed his note, under seal, for $972.50, dated September 1, 1893, and due at ninety days and expressed to be secured by a deed in trust on real estate. The note bore an endorsement of a credit of $773.50, dated October 31, 1893.

The plaintiffs filed the following affidavit in reply to the answer of the defendants, to wit:

The plaintiffs above named, reiterating the truth of the facts set forth in their complaint, say, in reply to the allegations in defendants' answer—

" 1. That the allegations in section 1 of the further answer are not true, except as set forth in their complaint herein, and they deny the same, except so far as same are set out in said complaint. Said A. M. Basket is sixty-eight years old.

" 2. It is admitted, in reply to allegations in section 2 of said further answer, that the plaintiff A. M. Basket signed the deed of trust mentioned, but they say that same is invalid for the reason set out in the complaint; that they admit the indebtedness to said John R. Moss for $27.50, and say they are ready and willing to pay said amount, and have so stated to defendants. The other allegations in said section are denied.

" 3. In answer to allegations in section 3, they say the same are not true, except as same are set out in their complaint, and that said A. M. Basket did object to the amount as claimed to be the balance on said trust deed.

" That the actual expenses to Washington, as affiant is informed and believes, would not exceed $50 or $60 for both Wortham and Basket.

" 4. In answer to allegations in section 4, these affiants say that, so far as the charges of fraud and deceit are concerned, the same are denied, and the other allegations are not true as therein stated.

" 5. They deny the allegations of sections 5 and 6."

" 7. The allegations of section 7 are not true, except as set out in their complaint.

" Further replying to said affidavit, they say it is true that defendant A. M. Basket was an applicant for the postoffice in Henderson ; that he employed Mr. Wortham to aid him, and it was agreed his fees should be $25 or $30, and he does not remember the exact amount."

His Honor continued the restraining order until the hearing, and defendants appealed.

Mr. H. C. Zollicoffer, for plaintiffs.
Mr. T. T. Hicks, for defendants (appellants).

CLARK, J.: The public has a right to some better test of the capacity of their servants than the fact that they possess the means of purchasing their offices.  The Code, § 1871, provides, "All bargains, bonds and assurances made or given for the purchase or sale of any office whatsoever, the sale of which is contrary to law, shall be void."  Notwithstanding the office is an office under the United States government, if an action were brought in our Courts to recover upon a bond or mortgage given for such consideration, our Courts would hold it void.  Such agreements are void at common law, as well as by statute.  So also contracts to procure appointments to office are void (Mechem on Public Officers, § 351); or to resign office in another's favor.  Ibid., § 357 ; Meacham v. Dow, 32 Vt., 721; Gracone v. Wroughton, 11 Exch., 146. Public offices are public trusts, and should be conferred solely upon considerations of ability, integrity, fidelity and fitness for the position.  Agreements for compensation to procure these tend directly and necessarily to lower the character of the appointments to the great detriment of the public. Hence such agreements, of whatever nature, have always been held void as being against public policy.  Maguire v. Comine, 101 U. S, 108; Tool Co. v. Norris, 2 Wall., 45; Gray v. Hook, 4 N. Y., 449; Gaston v. Drake, 33 Am. Rep., 548; Filson v. Himes, 47 Am. Dec., 422; Faurie v. Morin, 4 Mar-

tin (La.), 39; *Liness* v. *Hessing*, 92 Am. Dec., 153. Says
AMES, C. J., in *Eddy* v. *Capron*, 67 Am. Dec., 541, "By the
theory of our government, appointments to office are pre-
sumed to be made solely upon the principle *detur digniori*,
and any practice whereby the bare consideration of money
is brought to bear in any form upon such appointments to
or resignation of office, conflicts with and degrades this great
principle. The services performed under such appointments
are paid for by salary or fees, presumed to be adjusted at the
point of adequate remuneration only. Any premium paid
to obtain office interferes with this adjustment and tempts to
peculation, overcharges and frauds in the effort to restore
the balance thus disturbed." Besides, the moral sense revolts
at traffic to any extent in the bestowal of public office. It
is against good morals as well as against the soundest prin-
ciples of public policy. If public offices can be sold or pro-
cured for money, the purchasers will be sure to reimburse
themselves by dispensing the functions of their offices for
pecuniary consideration. The law wisely guards against the
first step in that direction. For that reason, not only the
sum agreed to be paid directly to the holder of this office to
resign, but the amounts advanced for expenses and compen-
sation of persons to go to Washington to procure the author-
ities there to accept the resignation of one party and the
appointment of the other, are not recoverable. For the same
reason that agreements to pay for lobbying the passage of
bills before a legislative body are void (Lawton on Contracts,
§ 309, and Mechem on Officers, § 360, and cases cited), all
agreements for expenses and compensation of persons seek-
ing to influence or procure appointments to office are void.
Lawton, *supra*, § 310. "The Courts condemn the very appear-
ance of evil, and it matters not that in a particular case
nothing improper was done or expected to be done. It is
enough that the employment tends directly to such results."
*Clippinger* v. *Hepbaugh*, 40 Am. Dec., 519: *Wood* v. *McCann*,

6 Dana (Ky.), 366; *Mills* v. *Mills*, 100 Am. Dec., 535, and numerous other cases cited in notes to Mechem on Officers, § 360; Lawton, *supra*, § 311, and cases cited.

If an action had been brought to recover these sums, or to foreclose a mortgage given to secure payment thereof, the Court would dismiss the action. The defendant contends, however, that as he was careful to take a mortgage with a power of sale, the Courts will not interfere by injunction, but will let him proceed to collect his ill-gotten gains. This would simply legalize the practice which is denounced both by statute and common law. Reasons of public policy forbidding this species of corruption are too profound and too important to the public welfare to be evaded and nullified by so simple a device. A mortgage given to secure a sum of money upon an agreement against public policy is void. *The Code*, § 1871; *Teal* v. *Walker*, 111 U. S., 252; *Wildey* v. *Collier*, 7 Md., 275; *Crowder* v. *Reed*, 80 Ind., 1. The sale under a void mortgage would be a cloud on the title, and an injunction lies, especially when the invalidity does not appear upon the face of the mortgage, but requires extrinsic evidence to prove it. 1 High on Injunc., section 469; *Yager* v. *Murkle*, 26 Minn., 429. In cases where the consideration is immoral, the deed will be set aside. 2 Addison Cont., 716.

Pomeroy Eq. Jur., sections 939, 940, 941, 942, calls attention to the fact that the rule *in pari delicto* is often misunderstood, and its application is properly and correctly that in such cases "*potior est conditio possidentis*"—that is, that the Court will permit nothing to be done which will enable a party to collect from the other the fruits of his wrong. When he sues to recover, the law will not give him judgment. When he has shrewdly attempted to evade this by taking a mortgage with a power of sale, the Court will by injunction prevent his collecting on a mortgage denounced as void by reasons of public policy. In section 941 he says: " Whenever public policy is considered as advanced by allow-

BASKET *v.* MOSS.

ing either party to sue for relief against the transaction, then relief is given to him. In pursuance of this high principle, and in compliance with the demands of a high public policy, equity may aid a party equally guilty with his opponent, not only by cancelling and ordering the surrender of an executory agreement, but even by setting aside an executed contract, conveyance or transfer, and decree the recovery back of money paid or property delivered in performance of the agreement." Also, in section 940, he says that whenever the defensive remedy at law will not be equally certain, perfect and adequate, the equitable remedy will be granted by injunction and the like. "The equitable relief so conferred does not violate the general maxim concerning parties *in pari delicto ;* on the contrary, it carries that maxim into effect." So in the present case the injunction against sale under the void mortgage taken against public policy, enforces that maxim by prosecuting either party recovering anything from the other. This is also the well settled rule in England. In *Lloyd* v. *Gordon*, 2 Swan, 181, Lord ELDON granted an injunction to restrain the negotiation of bills of exchange which were made void by statute 9 Anne C, 14, which is in the very tenor of section 1871 of *The Code*, applicable to the present transaction. Lord HARDWICKE granted the injunctive relief in a similar case. *Smith* v. *Aykwell*, 3 Atkins, 566, and the vice-Chancellor in *Earl of Milltown* v. *Stewart*, 3 Simons, 371, which was affirmed by Lord COTTENHAN, 3 M. and C., 18.

In such case, before the Master of the Rolls, Sir JOHN ROMILLY, where part of the consideration was for money loaned, and part was for an immoral consideration, the whole mortgage was ordered to be cancelled, the Court declining to pass upon the question whether the mortgagee could recover at law for the valid part of the consideration—*i. e.*, the money loaned. *Willyams* v. *Bullmore*, 33 L. J. R. (Eq.), N. S., 461. In the present case, upon the defendant's own showing, $37.50 is the only valid part of the sum attempted to be

secured. Whether the mortgage can be upheld to that extent is not before us, as the plaintiff in his reply expresses his willingness to pay said sum. The plaintiff recovering judgment for the cancellation of the mortgage, the defendant should be taxed with the costs. The injunction was properly continued to the hearing.        Affirmed.

SHEPHERD, C. J. (concurring): I concur in the conclusion of the Court that the agreement which the mortgage is given to secure is contrary to public policy, and therefore illegal, and I am also of the opinion that the injunction should be continued until the final hearing. It is alleged that the plaintiff Joseph Basket has a resulting trust in the land included in the mortgage, and as it does not appear that he had any connection with the illegal transaction between A. M. Basket, the mortgagor (the holder of the legal title), and the mortgagee, I see no reason why the equitable aid of the Court should not be extended to him.

I cannot agree, however, in that part of the opinion which declares that A. M. Basket is entitled to equitable relief. "Whenever a contract or other transaction is illegal, and the parties thereto are, in contemplation of law, *in pari delicto*, it is a well-settled rule, subject only to a few special exceptions depending upon other considerations of policy, that a Court of Equity will not aid a *particeps criminis*, either by enforcing the contract while it is yet executory, or by relieving him against it by setting it aside, or by enabling him to recover the title to property which he has parted with by its means. The principle is thus applied in the same manner when the illegality is merely *malum prohibitum*, being in contravention of some positive statute, and when it is *malum in se*, as being contrary to public policy or to good morals. Among the latter class are agreements and transfers, the consideration for which was violative of chastity, compounding of a felony, gambling, false swearing, the commission of any crime or breach of good morals." 1 Pom. Eq., 402.

BASKET *v.* MOSS.

" Where the party seeking relief is the sole guilty party, or where he has participated equally and deliberately in the fraud, or where the agreement which he seeks to set aside is founded in illegality, immorality, or is base and unconscionable on his part—in such cases Courts of Equity will leave him to the consequences of his own iniquity, and will decline to assist him to escape from the toils which he has studiously prepared to entangle others, or whereby he has sought to violate with impunity the best interests and morals of social life. * * * Courts of equity could not, without staining the administration of justice, interfere to save the party from the just results of his own misconduct, when the failure of success in the scheme would manifestly be the sole cause of his praying relief." 2 Story Eq., 696 ; Adams' Eq., 418.

These principles are so well established that it is hardly necessary to produce authority to their support, and that they have been recognized by this Court is plainly evident by a reference to the cases of *York* v. *Merritt*, 77 N. C., 213 ; *Sparks* v. *Sparks*, 94 N. C., 527, and authorities cited.

There are, it is true, limitations to the rule, as where parties are not equally in fault, or as in the case of usury, where the borrower is considered as *in vinculo*, or where the security is for past cohabitation ; and there are cases where, under peculiar circumstances, considerations of public policy will be best subserved by granting relief. These and other instances will be found in the text-books and notes to which I have referred, and there seems to be some confusion in the decided cases upon the subject. No satisfactory authority, however, can, in my opinion, be found to take the present case out of the general rule. If, as we have seen, the Court will not interfere where the consideration is the compounding of a felony for the commission of a crime, it is difficult to understand why it should extend its relief where the consideration is for the commission of the offence alleged in the complaint. Certainly, considerations of public policy are as grave in the

former cases as in the latter. Again, it will hardly be con-
tended that the plaintiff A. M. Basket is not equally in fault.
Indeed, it appears from the written agreement executed con-
temporaneously with the mortgage, that he was the *moving*
party in the transaction. The proposition was made by him,
and it is perfectly clear that his guilt is equal if not greater
than that of the defendant. Again, if it be conceded that
he is entitled to the relief on the ground that part of the
contract, the note, is executory, the Court would only grant
it upon terms, and as the mortgagee has, under the agree-
ment, so credited the note that everything is eliminated
except certain expenses and counsel fees, and a pre-existing
debt (leaving only a balance of about $200), it would seem
very clear that the Court, even if it interfered, would not
place him in any better condition. The expenses and counsel
fees were actually expended in furtherance of his own prop-
osition, and it would seem a complete reversal of the maxim
*in pari delicto melior est conditio defendentis*, to so use the
equitable power of the Court as to extricate the plaintiff from
the position in which he has placed himself, and put the
entire expense of carrying out his own proposition upon the
shoulders of the defendant. No clearer case can, in my
opinion, be conceived for the application of the rule than
the present.

Furthermore, it is a fundamental principle that a Court of
Equity never interferes where there is a complete defence at
law. High on Injunction, 473. In the present case it is said
that the mortgage is utterly void. If this be so, there is no
occasion for equitable relief, not even on the ground that it
is necessary to discover and preserve the evidence of its ille-
gality, as the contemporaneous agreement executed by all of
the parties is plenary proof of the vitiating element. 2 Story
Eq., 700.

This consideration, as well as the firmly established rule
*in pari delicto*, etc., is also a complete bar to the prayer that

the deed be cancelled on the ground that it is a cloud upon plaintiff's title. 2 Story Eq., 700. Public policy will be far better subserved by leaving the plaintiff where his illegal conduct has placed him, than by encouraging him in another attempt to violate the law by the assurance that a Court of Equity will always stand ready to relieve him against the consequences of his unsuccessful experiments. "The suppression of illegal contracts is far more likely in general to be accomplished by leaving the parties without remedy against each other, and by thus introducing a preventive check naturally connected with a want of confidence, and a sole reliance upon personal honor. And so accordingly the modern practice is established." 1 Story Eq., 298.

The case of *Patterson* v. *Bonner*, 48 Cal., 369, cited in the opinion to the effect that a mortgage given to secure money upon an agreement against public policy does not divest the title, does not aid the plaintiff, for, if the title is not divested, there is certainly no occasion for resorting to a Court of Equity where the illegality is evidenced, as in this case, by the contemporaneous agreement referred to. The case, however, decides the other way. It holds that the title passes, but that the performance of the illegal condition will not divest the title of the grantee. The case cited from Indiana is equally inapplicable, as it was an action at law to enforce an illegal executory agreement, and it was of course held that the defendant could plead the illegality of the consideration. The case from Maryland is also inapplicable, as it was an action to foreclose a mortgage given upon an illegal consideration, and the Court refused relief. It is no authority that the Court would have aided the mortgagor had he been seeking a decree for cancellation. The case of *Willyams* v. *Bullmore*, 33 L. J. R., cites no authority. It seems, however, that the mortgagee was seeking foreclosure, and that this action was consolidated with one brought by the mortgagor for cancellation. Under these circum-

stances there was a decree for cancellation. It is doubtful whether the Court would have made such a decree, had not the mortgagee been seeking foreclosure. However this may be, it cannot be regarded as sufficient authority to overturn the well-established rule embodied in the maxim which I have quoted. There is nothing in the reference to Pomeroy's Eq. Juris. which at all countenances relief under the circumstances of this case. The defendant has already agreed to terms as favorable as would be imposed by a Court of Equity.

I think that A. M. Basket has no standing in a Court of Equity, and that, under the circumstances, he is entitled to no relief. To interfere in his behalf would be giving aid and comfort to the moving party in this illegal transaction.