GWYN, HARPER & CO. v. RICHMOND & DANVILLE R. R. CO.

*Vendor and Vendee—Liability of Carrier—Agent and Principal—Stoppage in transitu.*

1. Goods bought and paid for were delivered to a railway company, whose bill of lading was executed to the vendor acknowledging the receipt of the goods to be conveyed to the vendee; *Held*, that the contract for transportation is in legal effect with the vendee, and the company liable to him for non-delivery of the goods. In such case the title vests in the vendee purchaser, and a delivery of the goods to the carrier is a delivery to the purchaser himself.

2. Where one through his agent sells goods to another, and they are shipped to the purchaser, the agent has no right to stop the goods *in transitu*, because his principal owes him on account of money advanced in the purchase of the goods.

(*Jenkins* v. *Jarrett*, 70 N. C., 255; *Ober* v. *Smith*, 78 N. C., 313, cited and approved.)

CIVIL ACTION removed from Caldwell and tried at Fall Term, 1881, of BURKE Superior Court, before *Seymour, J.*

The action was brought to recover the value of a certain lot of cotton. Judgment for plaintiffs, appeal by defendant.

*Messrs. Armfield, Folk* and *Cilley*, for plaintiffs.
*Messrs. Reade, Busbee & Busbee*, for defendant.

SMITH, C. J. On March 10th, 1880, J. P. Harper, one of the plaintiffs, acting for the plaintiff firm, bought from Mc-Auley & Meacham, at Charlotte, forty-nine bales of cotton of which twenty were then in possession of their agents, Neely & Bro., at Linwood, on the line of the defendant's road, and paid for the same. By direction of the vendors, Neely & Bro. on the next day delivered the cotton to the defendant company, taking therefor a shipping receipt in the name of their principals for the transportation and delivery of it to the plaintiffs at Icard, a station on the Western North Carolina railroad. The receipt was retained and at the same time Neely & Bro., drew on the said McAuley & Meacham for a sum over $700, a balance due for moneys advanced in their purchases of cotton. Receiving a telegram from the latter that the draft would not be paid, M. Neely pursued and overtook the cotton at Salisbury, and presenting the receipt to the defendant's agent at that place with a demand for a re-delivery, was allowed to take it from the custody of the company and afterwards converted it to his own use.

M. Neely testified that there was "a universal custom among cotton buyers, when they had not been paid in full for their advances, upon shipping cotton, to hold on to the bill of lading as evidence of their title."

The defendant requested the court to instruct the jury:

1. That if the custom testified to prevailed, and McAuley & Meacham were indebted for moneys so advanced by their

agents, the latter had still a lien on the cotton and a right to resume possession from the defendant.

2. That the existence of this usage put the plaintiffs upon inquiry as ·to the lien, and there was no evidence of their having made such inquiry.

The court charged that when the defendant signed the bill of lading it undertook to carry safely and deliver the cotton to the plaintiffs at Icard, and failing to do so, is liable, unless some sufficient excuse is shown; that the contract of the plaintiffs with McAuley & Meacham vested in the former such title as the latter had in the cotton; and that while M. Neely & Bro. could retain possession until repaid their advances, yet when they marked the bales with the plaintiffs' name and transferred them to the custody of the defendant for carriage and delivery to the plaintiffs at the place of destination, they parted with their lien, and the plaintiffs having thus acquired full title could recover, notwithstanding the vague and indefinite custom governing the dealings between principals and their agents as shown in evidence.

The law applicable to the facts of the case has been, in our opinion, correctly explained in the instructions to the jury. The sale of a specific chattel by words operating *in presenti* transfers the vendor's title to the vendee, with a right to retain possession until the purchase money is paid, in the absence of any contrary intent expressed or implied. When the purchase money is paid, the title vests absolutely in the purchaser, and a right to immediate possession. Hilliard Sales, §§ 2 and 4; *Jenkins* v. *Jarrett*, 70 N. C., 255. So a delivery of goods, bought and paid for, to a carrier for transportation and delivery to the purchaser, is a delivery to the purchaser himself. The carrier is in such a case the vendee's agent to receive and accept the goods. Hilliard Sales, § 42.

The authorities are numerous, say the court, in *Ober* v. *Smith*, 78 N. C., 313, " to the effect that a delivery of goods to a carrier designated by the purchaser is of the same legal

effect as a delivery to the purchaser himself, and that it is not necessary that he should employ the carrier personally or by some agent other than the vendor," and the some result follows when the mode of transportation is the usual or only one existing. It is equally true that the agent's right to retain until reimbursed what he may have paid out for his principal in purchasing the goods, may be surrendered and lost by his execution of his principal's contract of sale in making a delivery to the vendee.

A lien is defined to be "a right to hold possession of another's property for the satisfaction of some charge upon it." 3 Pars. Cont., 234. The right of lien cannot exist without possession, and is an inseparable incident to possession. The surrender of the one is the extinction of the other; and this applies with greater force when the surrender is to a purchaser from the vendor against whom it exists in favor of his factor. Hill. Sales, ch 16, p. 198.

The bill of lading itself executed to the vendors and acknowledging the receipt of the cotton from them to be conveyed to the plaintiffs, so far from evidence of title in the agents, shows it to be in the plaintiffs, and that the carrier's contract is in legal effect with them. The re-delivery to the agents upon their demand was a breach of the defendant's contract, and rendered the company directly liable for the value of the surrendered goods.

The "usage" relied on is wholly unavailing to affect or defeat the rights of the true owners, and is foreign to the issue between the parties to the action.

The doctrine of stoppage in transitu furnishes no analogy favoring the defendant's exemption from liability, and is but a limitation upon the general rule which deems delivery to a carrier to be delivery to the consignee purchaser. It exists only when the purchase money has not been paid and the purchaser becomes insolvent, and is but an extension of the right of lien existing previous to the delivery to

the carrier. The vendor is in such case permitted to regain possession before the goods reach the hands of the consignee. Actual as distinguished from constructive possession acquired by the consignee, puts an end to the right of stoppage. Hilliard Sales, pp. 209, 216, *et seq*. The principle governing the relations of these parties has no application to the present case.

The plaintiffs have bought and paid for the goods and the delivery vests in them the title and right of action against the defendant for the value of them.

There is no error, and the judgment must be affirmed.

No error.                                                        Affirmed.