KELLY v. COURTER *et al.*

[*Opinion Filed July. 1, 1892.*]

1. ORGANIC ACT- *Sale of Malt Liquor.*—Under the organic act, providing that Laws Neb. c. 50, entitled "Liquors" shall be in force in the Territory, but no license shall be issued thereunder, taken in connection with said chapter 50, which makes it a misdemeanor to sell malt liquors without a license, the sale ot such liquors is illegal.

2. LEASE OF PREMISES—*Illegal Business.*—Where one leases premises for the keeping of liquor for sale, the landlord agreeing to supply ice to keep the premises cool, if the sale of such liquor is illegal the tenant cannot recover for damage to the liquor caused by failure of the landlord to supply ice as agreed.

*Appeal from the District Court of Kingfisher County, Hon. A. J. Seay, Judge.*

Action by E. J. Kelley against M. Courter & Co. Judgment for plaintiff, and defendants appeal. Reversed.

*Bently & Ferguson* and *W. W. Noffsenger*, for appellant.

*M. J. Kane* and *J. C. Roberts*, for appellee.

The opinion of the court was delivered by

CLARK, J.: This action was brought in the county court, December 1, 1890, to recover the damage done to a quantity of beer by reason of an alleged breach of contract, in not furnishing ice to keep a cellar cool in

1890. The contract is in the words and figures following to-wit:

"Articles of agreement made on this 23d day of June, 1890, by and between M. Courter & Co., of Wichita, Kansas, of the first part, and E. J. Kelly, of Kingfisher, Indian Territory, of the second part, have hereby agreed that E. J. Kelly shall have the privilege to put a cellar under M. Courter & Co's ice house, situated in Kingfisher. The cellar is to be built in good condition, as follows: Not to be cut closer than three feet to outside of building save at entrance; and to be lined on the sides with good lumber; the ceiling to be ceiled with good flooring; entrance to be made sufficiently tight, and the party of the second part to have the use of the same until January 1, 1891, with ice to keep it cool; in consideration of the same the party of the second part agrees to pay to the party of the first part $50 on demand and pay all expenses of building cellar, and it is further agreed that the party of the second part shall have the privilege to use the same during the season of 1891, at reasonable rent.

"It is further understood that the lumber and material in the cellar belongs and is a part of the rent of 1890."

The defendants, December, 18, 1890, answered, denying generally.

The action was transferred to the district court where the defendants asked leave to file an amended answer, denying that the words, "with ice to keep it cool," were in the contract when signed, and alleging that the plaintiff kept said beer in said cellar for sale, and was engaged in an illegal business; which was refused, to which ruling the defendants excepted.

Against the objections of the defendants the plaintiff introduced evidence tending to show that the aforesaid contract was duly executed and delivered; that the plaintiff constructed the cellar.

"That from July 1 until October 9, 1890, said plaintiff used said cellar to keep kegs of beer in."

That during said time said defendant kept ice in said ice house. and that the ice and the drippings of the water kept said cellar sufficiently cool to preserve said beer fresh and salable; that said beer was in good condition until October, 9, 1890; that on that day defendants removed the last of said ice from said ice house; that the cellar in two days time became so warm that 163 kegs of beer, all there was in said cellar, spoiled and became worthless before the plaintiff could remove it; that the market value of the beer, October 9, 1890, in said cellar, was $2.50 per keg, and that he had a government license to sell beer.

To this evidence the defendants demurred, which demurrer was by the court overruled, to which the defendants excepted.

The evidence on the part of the defendants among other things tended to show that the plaintiff was a citizen and resident of Oklahoma Territory during the year 1890, and was engaged in selling beer by the keg from July 1 to October 9, 1890, out of said cellar daily; and that the stock of beer in the cellar was from time to time replenished by shipments from Kansas City, to all of which the plaintiff excepted.

The defendants asked the court to give the following instructions, among others, to-wit:

"1. The jury is instructed that under the law, pleadings and evidence in this case you must find for the defendants and against the plaintiff.

"8. The jury is instructed that under the law and evidence in this case the plaintiff cannot recover for the loss of any beer stored in said cellar to be sold by him within the limits of territory known as Oklahoma Territory, between October 1, 1890, and January 1, 1891.

"9. The jury is instructed that under the law of this Territory beer could not legally be sold or jobbed within the limits of Oklahoma Territory by the plaintiff, and it is therefore presumed that it was the understanding of the defendants at the time the contract was

executed, that said cellar would not be used by the plaintiff for the purpose of conducting such illegal business, and for the purpose of storing beer for immediate sale within the Territory of Oklahoma."

All of which was refused.

The court thereupon gave the jury the following instructions:

"The court instructs the jury that if they believe from the evidence that the defendants contracted and agreed with the plaintiff to furnish ice to keep the cellar mentioned in the case, cool, as alleged, and that he failed to do so, and that by reason of such failure the plaintiff lost any beer after using reasonable care and diligence to secure said beer from loss; then the plaintiff is entitled to recover the reasonable value thereof; and in addition thereto any reasonable expenses incurred to prevent the loss, not exceeding $4.50, the amount alleged in the petition."

The plaintiff recovered judgment for $375.32 from which judgment the defendants appealed to this court.

It is apparent from the pleadings and evidence that the cellar was to be used for the storage and sale of beer and was so used from July 1, 1890, to the 9th day of October following.

By the organic act, Chap. 50, of the laws of Nebraska was made applicable to this territory. Section 11 of said chapter made it a misdemeanor to sell or give away upon any pretext any malt liquor without first having complied with the provisions of that act. Section 20 made it a misdemeanor to keep any such liquors for the purpose of sale without license, in violation of that chapter and authorized the premises where kept to be searched. Section 21 provided for the destruction of such liquors.

Section 11 of the organic act provides that no license shall be issued under said Chap. 50.

These penalties were attached to the sale of liquors without license and the law of congress absolutely prohibited the granting of license.

If the leasing by the plaintiff, was for the sale and storage of beer, it had in view clearly a violation of a plain provision of the statute. If not leased for that particular purpose the use of it for that purpose was unlawful.

Although the statutes may not have made it a mis-demeanor to rent a building to be used for that purpose, yet the renting of it for that purpose was so closely connected with illicit dealing in liquors in the violation of the law that it became infected and tainted with illegality.

It is the general rule in such cases that the party suffering loss cannot recover. If the act to be performed is prohibited the invalidity of a contract or agreement necessarily follows. Courts will not lend their aid to a party who seeks his remedy through an illegal contract or found his right to recover thereon.

In *Ennell v. Daggs*, 108 U. S. 146, the court held,

"All that can be meant by the term, according to any legal usage, is that the court of law will not lend its aid to enforce the performance of a contract which appears to have been entered into by both the contracting parties for the express purpose of carrying into effect that which is prohibited by the law of the land." (Broom's Legal Maxims, 732.)

And Lord Mansfield, in *Holman v. Johnson*, Cowp. 341, stated the ground on which, in such cases, courts proceed. He said:

"The principle of public policy is this *Ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If from the plaintiff's own stating or otherwise, the cause of action appear to arise *ex turpi causa*, or the transgression of a positive law of this country, then the court says he has no right to be assisted.

"It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff."

And the effect is the same, if the contract is in fact illegal, as made in violation of a statute, whether the statute declares it to be void or not. (*Bank of United States v. Owens*, 2 Pet. 527.)

"There can be no civil right," said Justice Johnson in that case, "when there can be no legal remedy; and there can be no legal remedy for that which is itself illegal."

In *Campbell v. Hell*, 7 Wallace, 558, the court held,

"The instruction given to the jury, that if the contract was illegal, the illegality had been waived by the reconventional demand of the defendants, was founded upon a misconception of the law. In such cases there can be no waiver. The defense is allowed, not for the sake of the defendant, but of the law itself. The principle is indespensable to the purity of its administration.

"It will not enforce what it has forbidden and denounced; the maxim *ex dolo malo non oritur actio*, is limited by no such qualification. The proposition of the contrary strikes us as hardly worthy of serious refutation. Whenever the illegality appears, whether the evidence comes from one side or the other the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection, would be tainted with the vice of the original contract, and void for the same reason.

Wherever the contamination reaches, it destroys. The principle to be extracted from all cases is, that the law will not lend its support to a claim founded upon its violation."

The judgment of the court below should be reversed.

Judgement reversed.

All the Justices concurring.