E. S. SHELBY VINEGAR CO. v. C. L. HAWN & SON.

(Filed 9 December, 1908).

1. **Spirituous Liquors—Sale in Prohibited Territory—Action Upon Contract—Doctrine, In Pari Delicto.**

   An action on account of sale of cider brought by the successor in business of the vendor firm, cannot be maintained, when it is established that the cider sold was intoxicating, that this was known to the parties and prohibited by law. Under the doctrine of *in pari delicto*, the parties are left *in statu quo*.

2. **Spirituous Liquors — Sale in Prohibited Territory — License — Evidence.**

   When there is evidence that cider sold was intoxicating, the sale of which was prohibited by law, it may be shown as an admission, or *quasi* admission, of plaintiff, that it took out United States license to sell intoxicating liquors.

3. **Spirituous Liquors—Sale and Contract in Prohibited Territory—Interstate Shipment.**

   A contract of sale of spirituous liquors, made in this State, to be delivered in prohibited territory here, is illegal, and cannot be enforced though shipped from another State.

4. **Same—Issues—Instructions.**

   Upon proper pleading and evidence, it was not error for the lower court to instruct the jury, that whether the contract of sale of spirituous liquors was made here in prohibited territory, and whether by its terms the delivery was made here, were issues of fact, in an action on contract of sale of such liquors shipped here from another State.

   WALKER and CONNOR, JJ., dissenting.

ACTION tried before *Ferguson, J.,* and a jury, February Term, 1908. Plaintiff appealed.

*W. A. Self* and *A. A. Whitener* for plaintiff.
*Hufham & Whitener* for defendant.

CLARK, C. J. This is an action on an account for sale of cider. It is found by the jury that the plaintiff's predecessor, or assignor, contracted in Hickory, N. C., for the sale of cider to be delivered in that town, that the cider sold was

intoxicating, and that plaintiff's predecessor knew that the
sale of intoxicating liquor was prohibited in Hickory by the
laws of the State at the time of such contract of sale, and
of the delivery.    The Court, upon these findings entered
judgment against plaintiff for costs, on the ground that "the
plaintiff cannot maintain an action for goods, the sale of
which was prohibited by the laws of the State."    The plain-
tiff excepted to the judgment, also to the admission in evi-
dence of the plaintiff having United States license to sell
intoxicating liquor.

The plaintiff's predecessor, or assignor, was engaged in the
business of selling this cider.    There was evidence that it
was intoxicating.    It was competent to show, as an admis-
sion, or *quasi-admission* by the plaintiff, that the cider was
intoxicating, that it took out United States license to sell
intoxicating liquors.    This has been fully discussed and de-
cided in *State v. Dowdy,* 145 N. C. 432.

The exception to the charge upon the fourth issue is with-
out merit.    The Court simply instructed the jury that it was
an issue of fact to be decided by them, whether the contract
of sale was made in Hickory, and whether by its terms, deliv-
ery was to be made in that town.    The jury found that the
contract was made in Hickory, that it was agreed that the
delivery was to be made there, and that delivery was in fact
made there.    This made the transaction illegal.    *State v.
Johnston,* 139 N. C., 640; *State v. Herring,* 145 N. C., 418.
This is not a case where a drummer here took an order for
liquor to be shipped in from another State, as was alleged in
*State v. Hanner,* 143 N. C., 632.

There is no prayer for instruction raising that point, but,
if there was, the contract being made in Hickory to deliver
there would make this an illegal contract, and the courts will
not lend their aid to collect an account based on such con-
tract.    If the liquor was shipped in from another State, that
was simply the method the plaintiff took to procure it for his

purposes. The delivery to defendant was agreed to be made in Hickory, and was so made. The plaintiff cannot violate the law by an illegal contract and then ask the courts to help it to enforce such contract.

When, as here, the parties are *in pari delicto,* the courts will help neither. If the money has been paid, it cannot be recovered back unless the statute so provides (as in regard to usury, Revisal, 1951), and if not paid, the courts will not aid collection. It will leave the parties to their own devices. *King v. Winants,* 71 N. C., 469; *Griffin v. Hasty,* 94 N. C., 438; *Basket v. Moss,* 115 N. C., 448; *McNeill v. R. R.,* 135 N. C., 733; *Oscanyan v. Arms Co.,* 103 U. S., 261 (which says, "Even if the invalidity of the contract be not specially pleaded"); *Ewell v. Daggs,* 108 U. S., 146.

The law will not lend its aid where the contract "appears to have been entered into by both the contracting parties for the express purpose of carrying into effect that which is prohibited by law." Broom's Legal Maxims, 108. The Oklahoma court neatly sums up the doctrine thus: *"The principle to be extracted from all the cases is, that the law will not lend its support to a claim founded upon its violation."* *Kelly v. Courter,* 1 Okla., 277.

No error.

WALKER and CONNOR, JJ., dissenting.