CHARLES M. PFEIFER & CO. v. J. P. ISRAEL.

(Filed 12 March, 1913.)

1. **Intoxicating Liquors — Principal and Agent — Notes — Purchase Price—Actions in Pari Delicto.**

A note given in this State for the purchase price of intoxicating liquors to a nonresident dealer, where the sale is made in North Carolina in violation of our prohibition laws, cannot be enforced in our courts, the parties being *in pari delicto*.

2. **Same—Place of Contract—Criminal Liability.**

Where the agent of a nonresident dealer in intoxicants solicits in North Carolina and effects a sale thereof here, where the purchaser executes his note for the purchase price, it is held that the contract of sale was made in North Carolina, prohibited by our laws, and not enforcible in our courts. *Semble*, the agent is subject to indictment.

ALLEN, J., concurring; WALKER and BROWN, JJ., dissenting.

APPEAL by plaintiff from *Justice, J.,* at Special Term, 1912, of HENDERSON.

*Michael Schenck and Murray Allen for plaintiff.*
*H. G. Ewart for defendant.*

CLARK, C. J. This was an action begun before a justice of the peace upon two notes for less than $200 each and on appeal consolidated by consent into one action. The notes were executed by the defendant to the plaintiff for whiskey bought from the plaintiff's agent. The order for the whiskey was given in Hendersonville, N. C., to the salesman of the plaintiff company, and the whiskey was shipped by the latter from Cincinnati, Ohio, to Hendersonville, N. C., and delivered to defendant at the latter place, and the notes were executed there.

This was the entire evidence. The issue was, "Is the defendant indebted to the plaintiff, and if so, in what sum?" His Honor instructed the jury that if they believed the evidence to answer the issue "No." The jury responded accordingly. The defendant excepted to the instruction and to the judgment, and appealed.

The point before us was expressly decided in *Vinegar Co. v. Hawn,* 149 N. C., 355, upon an identical state of facts. The Court held that "the contract being made in Hickory, to deliver there was illegal, and the courts of this State will not lend their aid to collect an account based on such contract. If the liquor was shipped in from another State, that was simply the method the plaintiff took to secure it for his purposes. The delivery to defendant was agreed to be made in Hickory, and was so made. The plaintiff cannot violate the law by an illegal contract and then ask the courts to help it to enforce such contract. When, as here, the parties are *in pari delicto,* the courts will help neither. If the money has been paid, it cannot be recovered unless the statute so provides (as in regard to usury, Revisal, 1951), and if not paid, the courts will not aid in the collection. It will leave the parties to their own devices," citing *King v. Winants,* 71 N. C., 469; *Griffin v. Hasty,* 94 N. C., 438; *Basket v. Moss,* 115 N. C., 448; *McNeill v. R. R.,* 135 N. C., 733; *Oscanyan v. Arms Co.,* 103 U. S., 261 (which holds that it is not even necessary to plead the invalidity, it being sufficient if it appear on the evidence); *Ewell v. Daggs,* 108

U. S., 146. The Court further cited with approval the following from *Kelly v. Courter,* 1 Okla., 277: "The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation." To same purport, *Walker, J., Edgerton v. Edgerton,* 153 N. C., 167.

Not only is the contract for the sale of liquor invalid, but the agent was indictable for soliciting the sale. Laws 1908, chap. 118, now Pell's Revisal, 3527a.

It was in regard to such a statute as this that the United States Supreme Court held in *Delamater v. South Dakota,* 205 U. S., 93, that a State "may forbid the carrying on within its borders the business of soliciting orders for liquor, although such orders may only contemplate a contract resulting from final acceptance in another State." In that case *Mr. Justice White* said, referring by name to *Robbins v. Shelby Taxing District,* 120 U. S., 489; *Caldwell v. North Carolina,* 187 N. C., 682; *R. R. v. Sims,* 191 U. S., 441, that the Court put out of view those cases, "because they concerned the power of a State to deal with articles of interstate commerce other than intoxicating liquors, or which, if concerning intoxicating liquors, related to controversies originating before the enactment of the Wilson law. The general power of the State to control and regulate the business of dealing in or soliciting proposals within their borders for the purchase of intoxicating liquors is beyond question."

The Court further said: "The business of soliciting proposals in South Dakota was one which that State had a right to regulate, wholly irrespective of when or where it was contemplated the proposals would be accepted or whence the liquor which they embraced was to be shipped."

It is recognized, therefore, by both the State and Federal courts that the contract by which this liquor was ordered was an illegal contract, and that the fact that it was to be shipped here from Ohio did not make the contract valid. It follows that the courts will not enforce the payment of a note given in execution of an illegal contract. The proposition is so fully discussed by *Judge Field* in *Oscanyan v. Arms Co.,* 103 U. S., 261, and cases there cited that further debate is unnecessary.

Where a person in this State, at the request of another, agreed to buy cotton futures for him in New York, a contract also made illegal by our statutes, it was held that the person sending the order to New York for the purchase of the futures could not recover his losses. *Garseed v. Sternberger,* 135 N. C., 501. There the whole transaction was in New York, but the contract to do the act was made in North Carolina. This has been cited and reaffirmed in *Burns v. Tomlinson,* 147 N. C., 647, which held a subsequent promise to pay invalid. The Court said, "Certainly the courts could not aid the plaintiff to a recovery when our statute makes it a misdemeanor to aid directly or indirectly in making such contracts," citing also to the same effect, with approval, *S. v. Clayton,* 138 N. C., 732. In the latter case the Court held that it is "competent for the Legislature to provide that gambling contracts participated in by the defendant in this State, either originating or being ratified here, shall be indictable in our courts, and such contracts are not protected by the interstate commerce clause of the Federal Constitution." *S. v. Clayton* was also cited as authority in *Rankin v. Mitchem,* 141 N. C., 284.

Where a note was given in consideration of a bet on a horse race in another State, it is not enforcible here. *Gooch v. Faucett,* 122 N. C., 270. Here the notes were given in this State upon an illegal contract also made in this State.

No error.

ALLEN, J., concurring: It does not appear from the record that the order given by the defendant for the whiskey was forwarded to the plaintiff at Cincinnati and accepted there.

On the contrary, the uncontradicted evidence is that the salesman of the plaintiff went to Hendersonville and there accepted the unconditional order for the whiskey, which was shipped subsequently from Cincinnati on the order, and the notes sued on were executed in Hendersonville.

The term "salesman" implies that the agent of the plaintiff had authority to make a contract of sale, and the subsequent delivery was but in performance of the contract.

If so, the action is to recover on a contract for the sale of intoxicating liquors made in this State, which cannot be enforced.

Page on Contracts, sec. 2592, says: "If the contract is made through an agent, and the principal is in another jurisdiction, the question where the contract is made depends upon the authority of the agent and the manner in which he attempts to bind his principal. If he has authority to bind his principal, and he does so as a finality, the place where he enters into the contract is the place where the contract is made."

In *Backman v. Mussey,* 31 Vt., 550, the contract of sale of intoxicating liquors was made in Vermont and the liquors were shipped by a New York dealer from New York, and the Court says as to this item: "The contract for the first bill of liquors charged in the plaintiff's account was so far made in this State, though consummated by a delivery without the State, as to be invalid here."

Also in *Starace v. Rossi,* 69 Vt., 304, the order was taken in Vermont by an agent of the plaintiffs and sent to the plaintiff at New York and accepted there, and the Court said: "But it is claimed that the contract for this liquor was made in New York, and that, therefore, recovery can be had. The answer to this is, that the contract was in part, at least, made in this State, and that prevents recovery as effectually as though it had been wholly made here." The courts of Iowa sustain the same principle. *Yegler v. Shipman,* 33 Iowa, 200; *Taylor v. Pickett,* 52 Iowa, 468.

The case of *Westheimer v. Weisman,* 60 Kan., 753, is not in conflict with these views, because under the facts presented, no contract was made in Kansas, it being expressly stated that the order taken by the agent was subject "to the approval of the plaintiffs at their place of business in Missouri," and the Court says upon this point: "The agent did no more than make an offer of sale, subject to the approval of his house. The final acceptance of the order and the consummation of the sale occurred in Missouri, where such sales were lawful."

WALKER, J., dissenting: This action was brought to recover the amount of two notes, one for $143.65, dated 17 June, 1910,

and the other for $150, dated 5 December, 1910, both made at Hendersonville, N. C., the first payable generally and the second at Hendersonville, N. C. The evidence was to the effect that they were given for whiskey, bought by the defendant upon orders for the same sent through an agent of the plaintiffs, then at Hendersonville, N. C., to the plaintiffs at Cincinnati, Ohio, and accepted by them there. The liquor was shipped from Cincinnati to Hendersonville and there delivered to the defendant, who pleaded the illegal consideration, namely, the sale of the liquor in this State. The court submitted the following issue to the jury, "Is the defendant indebted to the plaintiff, and if so, in what sum?" and upon the evidence instructed the jury, if they believed it, to answer the issue "No," which was done, and from the judgment upon the verdict the plaintiff appealed.

The opinion of the Court is based upon the erroneous assumption that the sale of the liquor was made in this State, whereas, even according to our own decisions, it was made in the State. of Ohio, where the sale of liquor is not prohibited. There is no evidence that it is, and the fact is that it is not.

We have frequently held that where there is a purchase of goods and the seller delivers them to a carrier for transportation and delivery to the purchaser at another place, the sale is completed upon the delivery to the carrier by the seller, the carrier, in such a case, being the agent of the purchaser to receive and accept the goods. This was clearly decided in *Gwynn v. R. R.,* 85 N. C., 429, and *Hunter v. Randolph,* 128 N. C., 91, and is an elementary principle in the law of sales. "As soon as an order for goods is accepted by the seller, the contract of sale is complete without further notice to the vendee, and the contract is fully performed on the part of the seller by the delivery of the goods to the proper carrier." This was said by the Court in *Ober v. Smith,* 78 N. C., 315, and approved in *R. R. v. Barnes,* 104 N. C., 25. The rule is so inflexible that in *Crook v. Cowan,* 64 N. C., 743, a very harsh application of it was made by the Court, and the defendant was required to pay for carpets he had ordered, without notice of the acceptance of his order, upon the ground that delivery to the carrier, an express company, was delivery to him and a sufficient accept-

ance of his proposal to buy. But apart from our own decisions, which are conclusive upon the question involved in this appeal, the Supreme Court of the United States, whose decisions in respect to it are binding upon us, has decisively settled the matter and so foreclosed it that it would seem that further discussion should be unnecessary. This transaction is a "National subject," and not subject to local regulation or local views of public policy or to diverse legislation and rulings in the States, which, if permitted, would be at once destructive of the paramount right of control and regulation by Congress as conferred by the commerce clause of the Federal Constitution. In *Leisy v. Harden,* 135 U. S., 100, the Court said: "That ardent spirits, distilled liquors, ale and beer, are subjects of exchange, barter, and traffic, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of Congress, and the decisions of courts, is not denied. Being thus articles of commerce, can a State, in the absence of legislation by Congress, prohibit their importation from abroad or from a sister State? If the importation cannot be prohibited without the consent of Congress, when does property imported from abroad, or from a sister State, so become a part of the common mass of property within a State as to be subject to its unimpeded control?" And it thus answers the question: "To extend the police power over subjects of commerce would be to make commerce subordinate to that power, and would enable the State to bring within the police power 'any article of consumption that a State might wish to exclude, whether it belonged to that which was drunk, or to food and clothing; and with nearly equal claims to propriety, as malt liquors and the products of fruits other than grapes stand on no higher ground than the light wines of this and other countries, excluded in effect by the law as it now stands. And it would be only another step to regulate real or supposed extravagance in food and clothing.' . . . It cannot, without the consent of Congress, express or implied, regulate commerce between its people and those of the other States of the Union in order to effect its end, however desirable such a regulation might be." The Court denies the proposition that a State can,

by its laws, either directly or indirectly, prohibit the importation of liquor into its borders and its delivery to a purchaser there, nor the sale of it in the original package, except to the extent that Congress, in the legitimate exercise of its constitutional powers, has authorized it to do so. Congress has, by the act of 8 August, 1890, known as the Wilson Act, permitted the States to forbid the sale of imported liquor after its delivery to the consignee, but not before such delivery takes effect. But "it cannot pass the line of power delegated to Congress under the Constitution," nor that which Congress itself has marked as the extreme limit of State action. The Wilson Act distinctly referred only to sales of liquor in the original packages and did not permit the operation of State laws upon interstate shipments in liquor before that point in the commerce had been reached. Federal Penal Code, sec. 239, does not apply, because this is not a c. o. d. transaction. The plaintiff relied solely upon the credit of the defendant, and did not even take a bill of lading to his own order, and draw on the defendant with the bill attached for the purchase money, as was done in *S. v. Fisher,* decided at this term. If the transaction considered in that case was interstate commerce, and under the protection of the commerce clause of the Federal Constitution, surely, and by a much stronger reason, the one presented in this case must be so, for the shipment to the defendant by the plaintiff was direct, upon an open bill of lading, and the defendant, so far as appears, ordered the liquor for his own consumption and not for resale. The order for the liquor and the acceptance thereof at Cincinnati, Ohio, the delivery of it by the seller to the carrier at the latter place and its transportation to Hendersonville, with the delivery of it there to Israel, the purchaser, was a continuous and lawful transaction, as Congress had passed no law permitting the State laws to operate upon the shipment before the delivery of the package to the defendant, if it had the power to do so. In this connection, what is said by the Supreme Court of the United States, the final interpreter of the law upon all Federal questions, becomes very pertinent, and it is well to recall and consider it, lest we pass the bounds circumscribing State action. After

stating that the Court, in construing the Wilson Act, had held
that the law did not authorize State power to attach to liquor
shipped from one State into another before its arrival and de-
livery to the consignee within the State to which destined, the
Court, in *Delamater v. South Dakota,* 205 U. S., 93-100 (51
L. Ed., 724), uses this significant language: "The rulings in
the previous cases to the effect that, under the Wilson Act, State
authority did not extend over liquor shipped from one State
into another until arrival and delivery to the consignee at the
point of destination, were but a recognition of the fact that
Congress did not intend, in adopting the Wilson Act, even if it
lawfully could have done so, to authorize one State to exert its
authority in another State by preventing the delivery of liquor
embraced by transactions made in such other State." It was
further said by the Court that the Wilson Act adopted a special
rule, under which State authority as to liquor shipped from
other States is allowed to operate after, but not before, the
package of liquor has been delivered to the consignee, that is,
that State authority begins only where interstate commerce
ends. Many cases are cited by the Court in support of this
view, and there are none to the contrary. *Re Rahrer (Wilker-
son v. Rahrer),* 140 U. S., 545 (35 L. Ed., 572); *Rhodes v.
Iowa,* 170 U. S., 412 (42 L. Ed., 1088); *Vance v. W. A. Vander-
cook Co.,* 170 U. S., 438 (42 L. Ed., 1100); *American Express
Co. v. Iowa,* 196 U. S., 133 (49 L. Ed., 417); *Pabst Brewing
Co. v. Crenshaw,* 198 U. S., 17 (49 L. Ed., 925); *Foppiano v.
Speed,* 199 U. S., 501 (50 L. Ed., 288); *Heyman v. Southern
Railway Co.,* 203 U. S., 270. In *Heyman v. Southern Rail-
way Co., supra* (referring to *Vance v. Vandercook Co., supra*),
the language of the Court is clear and strong in comment-
ing upon the legal effect of the Wilson Act and in setting
the limits to State power under the act. "The interstate com-
merce clause of the Constitution," says the Court, "guarantees
the right to ship merchandise from one State into another, and
protects it until the termination of the shipment by delivery
at the place of consignment, and this right is wholly unaffected
by the act of Congress which allows State authority to attach
to the original package before sale, but only after delivery.

161—27

*Scott v. Donald,* 165 U. S., 58, 107 (41 L. Ed., 632, 648), and *Rhodes v. Iowa, supra.* It follows that under the Constitution of the United States every resident of South Carolina is free to receive for his own use liquor from other States, and that the inhibitions of a State statute do not operate to prevent liquors from other States from being shipped into such a State, on the order of a resident, for his use." And in subsequent cases the construction adopted in the previous cases of the word "arrival," as employed in the Wilson Act, has been reaffirmed and applied. The case of *Vance v. Vandercook Co., supra,* involving the validity of the dispensary law of South Carolina, had decided "that the State statute must permit the delivery of the liquors to the party to whom they were consigned within the State, but that, after such delivery, the State had power to prevent the sale of the liquors, even in the original package." The conclusion in inevitable, and we state it in the language of the Court itself, that "the Wilson Act merely provided, in the case of intoxicating liquors, that such merchandise, when transported from one State to another, should lose its character as interstate commerce (only) upon completion of delivery, under the contract of interstate shipment, and before the sale in the original package." *American Express Co. v. Iowa,* 196 U. S., at p. 142. That authority is decisive of this one, as it expressly repudiates the principle which it is contended applies to this case, and in unmistakable words. Referring to the numerous decisions of that Court upon this question, it says: "Those cases rested upon the broad principle of freedom of commerce between the States and of the right of a citizen of one State to freely contract to receive merchandise from another State, and of the equal right of the citizen of a State to contract to send merchandise into other States. They rested also upon the obvious want of power of one State to destroy contracts concerning interstate commerce, valid in the States where made." The Court further says that it will not stop to inquire when the title passes by delivery, or to reconcile conflicting decisions of the State courts in regard thereto, but places its decision upon the broad ground that when the liquor is ordered from a foreign State and the order is accepted and the shipment made

there, it is interstate commerce until arrival at its destination
and delivery to the buyer, and the State cannot interfere with
the shipment until such delivery has been completed. Review-
ing two decisions of that Court in cases where this Court had
been reversed upon the very question now presented (*Caldwell
v. North Carolina,* 187 N. C., 622; *Railway v. Sims,* 191 U. S.,
441), and applying them to shipments of liquor, the Court said:
"Indeed, the cases upon this subject are almost too numerous
for citation, and the one under consideration is clearly con-
trolled by them. The sewing machine was made and sold in
another State, shipped to North Carolina in its original pack-
age for delivery to the consignee upon payment of its price.
It had never become commingled with the general mass of prop-
erty within the State. While technically the title of the ma-
chine may not have passed until the price was paid, the sale was
actually made in Chicago, and the fact that the price was to be
collected in North Carolina is too slender a thread upon which
to hang an exception of the transaction from the rule which
would otherwise declare the tax to be an interference with inter-
state commerce." Deciding the same question in *Rhodes v.
Iowa,* 170 U. S., 412, and referring to *Bowman v. Railway,*
125 U. S., 465, the Court, in stating its conclusion, says: "It
might be very convenient and useful in the execution of the
policy of prohibition within the State to extend the powers of
the State beyond its territorial limits. But such extraterritorial
powers cannot be assumed upon such an implication. For if
they belong to one State, they belong to all, and cannot be exer-
cised severally and independently. The attempt would neces-
sarily produce that conflict and confusion which it was the very
purpose of the Constitution by its delegations of National
power to prevent."

The proposition cannot be denied that all the cases upon this
question of interstate commerce, from *Robbins v. Shelby Tax-
ing District,* 120 U. S., 489, to the last decision upon the sub-
ject, are applicable to a shipment of liquor from one State to
another, except in so far as the law may have been changed by
the Wilson Act and Federal Penal Code, sec. 239 (as to c. o. d.
shipments), which do not apply to the facts of this case, for

they have been so applied, with the exceptions stated, by the highest Federal court. It therefore is important to heed what the Court holds in *Railway v. Sims, supra,* that while the property in things sold may not technically pass, under a consignment, until the price is paid, "and hence it may be said that the sale is not completed until then, yet, as matter of fact, the bargain is made and the contract of sale completed as such when the order is received in the foreign State and the goods are shipped in pursuance thereof." This question cannot be settled finally by what we may say, as, in respect to it, this is not the court of last resort, and for that reason, if for no other, our views should be brought into harmony with the decisions of the Supreme Federal Court, which are authoritative and controlling in the matter. There is nothing to be gained by adding another reversal to those already sustained upon the identical subject. We are required by the Federal Constitution, as well as by our own, to submit to the supreme law, as declared by the highest Federal court.

If we refer to State decisions, a case exactly in point is *Westheimer v. Weisman,* 60 Kansas, 753, where a recovery was allowed upon a state of facts in all respects like those presented in this record. "A sale, the parties to which are of different States, is a transaction of interstate commerce, wherever the contract of sale may be made, when the goods are to be transported from one State to another, whether the sale is made before or after shipment. Negotiations and sale in such cases through selling agents or by agents to buy are also acts of interstate commerce." 7 Cyc., 415. "Where an order for liquors is taken by an agent and forwarded to his principal in another State, who fills the order and delivers the goods to a carrier for transportation to the purchaser, it is generally held that the place of the contract is the place where the order is filled." 23 Cyc., 337. "Where an order is given and accepted in a certain place and the goods delivered to a carrier for shipment, the contract is governed by the law of the place of shipment, and it makes no difference that they are not to be paid for until they arrive in a State to which they are shipped, unless the title is not to pass until they are received and paid for." 9 Cyc., 682-

683.  In a note to the last extract, p. 683, this State is said to be one of those in which it is held that the sale is complete when the goods are delivered to the carrier, citing *R. R. v. Barnes,* 104 N. C., 25, in support of the statement.  But we should carefully distinguish between decisions in which the question of title merely was involved and those where the question was one of interstate commerce, as in this case, though according to our own decisions, and even regardless of the question of interstate commerce, the title, under the facts of the case, passed to Israel when the liquor was delivered to the carrier at Cincinnati.  The law is thus stated very accurately and concisely in 23 Cyc., 336 and 337:  "A contract made in one State for the sale of liquors to be delivered in another State, such as would be valid at common law, and which is not shown to be invalid where made, will enable the seller to maintain an action for the price in the State where the delivery is made, notwithstanding that, if made in the latter State, the contract would have been void.  .  .  .  Where an order for liquors is taken by an agent and forwarded to his principal in another State, who fills the order and delivers the goods to a carrier for transportation to the purchaser, it is generally held that the place of the contract is the place where the order is so filled."  Numerous cases are cited in the notes in support of the text.  *Monaghan v. Reid,* 40 Mich., 665; *Wagner v. Breed,* 29 Neb., 720 (this case also decides the interstate commerce question); *Hill v. Spear,* 50 N. H., 253 (9 Am. Rep., 205); *Schlesinger v. Straton,* 9 R. I., 578.  In *Monaghan v. Reid, supra, Judge Marston* said:  "The evidence in this case tended to show that the note sued upon was given for liquors; that an agent of the plaintiffs below called at the place of business of defendant and took the order, which was sent on to his principals in New York, by them approved and the liquors shipped.  The court upon this theory of the case submitted the case to the jury in accordance with the rule laid down in *Kling v. Fries,* 33 Mich., 275."

In *Kling v. Fries,* just cited, it was held:  "Where an agent takes in Michigan a verbal order for goods and transmits it to his principals in Ohio for approval, and the latter there approve it and consign the goods to a common carrier in Ohio, and the

vendee accepts the goods in Michigan, paying the freight, the contract is an Ohio contract and not a Michigan one; and though the goods be intoxicating liquors, the transaction is not within the Michigan statute. At the common law a contract for the sale of goods, where nothing remains to be done by the seller before making delivery, transfers the right of property, though the price has not been paid nor the thing sold delivered to the purchaser. Illegality will not be presumed; nor will it be presumed, as against the validity of a contract, and in the absence of proof, that the statutes of another State have provisions similar to those of Michigan, and in derogation of the common law. It will not be presumed, in the absence of evidence or finding, that parties making a sale in another State, where it was presumably valid, of liquors to be transported to Michigan, intended thereby to assist the purchaser in violating the Michigan statute."

It is needless to do more than refer to the questions whether if the liquor was to be sold by defendant in violation of the State law, and plaintiff knew it at the time of the sale, he could recover, as the courts differ upon this matter, and the point is not in this case; nor is it necessary to discuss those cases which hold that the price of liquor sold in violation of law, for example, without a license, can be recovered, as that is not one of the questions in this appeal. I may say generally, though, that it is too late to question the proposition that liquor laws cannot be enforced by a State when it would involve the "regulation" of interstate commerce.

The fact that the agent of the plaintiff violated the law, if he did so, in taking the order for the liquor at Hendersonville, cannot affect the question so as to deprive plaintiffs of their right to recover, as the contract of sale, accompanied by the transportation of the liquor from a foreign State, was interstate commerce, which did not fall under the operation of the State law, as will fully appear by reference to the cases decided by the Federal Supreme Court and already cited. The statute, in its operation, is confined solely to the act of soliciting and receiving orders, and cannot have a more extensive effect, so as to prevent the consummation of the contract of sale,

which was lawful until the delivery of the goods, and being lawful, plaintiffs are clearly entitled to recover the price of the liquor represented by the notes in suit. Besides, the solicitation of the order for the liquor is immaterial and not necessary to be shown in order to recover. It was the proposal of the defendant to buy, and the acceptance of the offer by plaintiffs, that made the contract. *Vinegar Co. v. Hawes,* 149 N. C., 355, if sound law, when examined in the light of the cases decided by the Supreme Court of the United States and already cited, is easily distinguished, as it was found, as a fact, and so stated in the opinion, that the sale and delivery were in this State.

We have said that defendant bought the goods for his own consumption and not to resell, and this being so, it is not perceived how the judgment of the court below can be sustained, even under our own decisions, much less under those of the higher court, which are of paramount authority. *S. v. Fisher,* recently decided by this Court, is decisive of this case. We there held that the order for the goods by Carl Spencer, upon solicitation of Hatke's agent at New Bern, the acceptance of his order and the shipment of the liquor from Richmond by Hatke, although under a bill of lading to Hatke's order, was interstate commerce, and not subject to the operation of State laws, either the act prohibiting the sale of liquor or the one forbidding the solicitation of orders for liquor, though the agent may have been indictable for soliciting, and this decision was made after considering the cases in the Supreme Court of the United States upon the subject, which need not be further discussed here. If the contract of sale is valid, the plaintiff is clearly entitled to recover upon the notes.

But there are two cases which were decided upon facts identical with those in this appeal, and which held that where an order was given for liquor to be shipped from another State, and accepted there and the liquor shipped accordingly, the sale was completed in the foreign State, and besides, that, being interstate commerce, notwithstanding the Wilson Act, the contract of sale was not subject to the operation of our State laws, and was, therefore, perfectly valid. In one of these cases, *S. v. Whisenant,* 149 N. C., 517, *Justice Hoke* said: "There was no

testimony offered that would justify or permit a finding that a sale of whiskey consummated in Knoxville, Tenn., was an illegal sale; and if there had been, it would seem that, by reason of the commerce clause of the Federal Constitution, our State legislation on the subject could not affect the transaction, in respect to its criminality, until and after there had been a delivery within the State. *S. v. Trotman,* 142 N. C., 662. By fair intendment, and especially when taken in connection with the testimony on the subject, the verdict, as it was rendered by the jury, could only mean that they acquitted the defendant of retailing either liquor or cider, except in so far as the order sent for Ramsey to the house in Knoxville made out a case of guilt. This sale at Knoxville, as we have just said, was not illegal, and there was no evidence touching such order to show that defendant acted otherwise than as the buyer's agent." The defendant in the *Trotman case* was indicted for selling patent medicine without a license, contrary to the statute. It appeared that certain persons in this State gave orders for the medicines on a drug company in another State, which were forwarded to, received, and accepted by the company in that State, and the goods shipped from that State to the defendant, the drug company's agent in this State; that each package was wrapped in a separate parcel with the name of the purchaser marked thereon and then packed in one crate and shipped to the defendant, who distributed same in the original form to the purchasers: *Held,* that the defendant was not guilty, as he was at the time engaged in interstate commerce. *Caldwell v. North Carolina,* 187 U. S., 622, is cited as authority in the *Trotman case.* If the contract was declared valid because it was completed in the foreign State, and especially because it was interstate commerce and State laws could not affect it or directly invalidate it, how can this be done indirectly by merely declaring as unlawful the solicitation of orders for liquor? This proposition is hardly arguable. The soliciting agent may be criminally liable, but this does not render the contract illegal or void, for *no* laws of the State can reach it, as the commerce clause of the Federal Constitution stays the hand of the State until the liquor has been delivered. To hold otherwise would

be committing the regulation of the interstate commerce to the States. The *Delamater case, supra,* holds that the agent who takes the order is indictable, the statute forbidding him to solicit orders for liquor being valid as to him, but the Court, by *Justice White,* distinctly holds that the contract of sale is valid, being protected by the commerce clause against hostile legislation of the State, and it could not consistently hold otherwise.

It is suggested, however, that it does not affirmatively appear that the order for the whiskey was accepted at Cincinnati, Ohio. That is not my construction of the defendant's own testimony, but the court directed a verdict upon the testimony, and if there is any defect in the evidence, so much the worse for the defendant. The burden is not on the plaintiff, but on him, as he pleads the illegality, and he must plead and prove every fact necessary to show it. "In an action to recover the price of liquors sold, the declaration or complaint need not allege that the sale was authorized by law or by plaintiff's license, for if defendant relies on the illegality of the sale as a defense, he must allege and prove it, and this cannot be done under the general issue, but must be specially pleaded, and by a plea setting forth every fact essential to show that the sale was contrary to law." The presumption is that the contract was valid. Defendant testified, after admitting the execution of the notes, that he bought the liquor from the plaintiff; that it was shipped out from Cincinnati upon an order he gave for the same to plaintiff's agent at Hendersonville. To say the least, it was for the jury and not for the court to say, whether the shipment of the liquor at Cincinnati was an acceptance of the order. But in respect to the interstate feature of the contract of sale, the case is like *Robbins v. Taxing Dist. of Shelby County,* 120 U. S., 489 (30 L. Ed., 694), in which it appeared that the "salesman" or "drummer" of a firm resident in another State had solicited a sale of goods without taking out a license imposed by the State, and it was held that the negotiation of the sale of the goods at Memphis, Tenn., with the intention of shipping them into the State where the negotiation was made, from Cincinnati, Ohio, was interstate commerce, and the State of Tennessee could not by legislation control or hamper it. The orders were

made and the goods shipped the same way in both cases. The facts in *Caldwell v. North Carolina,* 187 U. S., 622 (47 L. Ed., 336), were even stronger in favor of the operation of the State license law, as the goods were shipped from Chicago, Ill., to Greensboro, N. C., "to the order of the shipper," and his agent, at the latter place, put the pictures and frames together and there delivered them to the persons who had given him the orders: *Held,* nevertheless, to be a sale in Chicago; and the same was decided in *R. R. v. Sims,* 191 U. S., 441 (48 L. Ed., 254), where the goods were shipped c. o. d. from Chicago, Ill., to Durham, N. C.: *Held,* to be a sale at Chicago. Both cases were decided under the commerce clause of the Constitution, and the transactions held to be interstate commerce not subject to State laws, as the sales were not made in this State within the meaning of that clause of the Constitution. There is no difference, in law, between this case and those I have cited, as the Wilson Act, in regard to shipments of liquor, does not operate until after delivery to the consignee, and there is no evidence that the liquor was bought for the purpose of a resale. In *Rhodes v. Iowa,* 170 U. S., 412 (42 L. Ed., 1088), we find language singularly pertinent here: "The right to contract for the transportation of merchandise from one State into or across another involved interstate commerce in its fundamental aspect, and imported in its very essence a relation which necessarily must be governed by laws apart from the laws of the several States, since it embraced a contract which must come under the laws of more than one State. The purpose of Congress to submit the incidental power to sell to the dominion of State authority should not, without the clearest implication, be held to imply the purpose of subjecting to State laws a contract which, in its very object and nature, was not susceptible of such regulation, even if the constitutional right to do so existed, as to which no opinion is expressed." Speaking of the right of a nonresident dealer to ship liquor into a State, the Court said, in *Adams Exp. Co. v. Kentucky (Brewer, J.)*: "Liquor, however obnoxious and hurtful it may be in the judgment of many, is a recognized article of commerce. *License Cases,* 5 How., 504, 577; *Leisy v. Hardin,* 135 U. S., 100-110.

In *Vance v. W. A. Vandercook Co.,* 170 U. S., 438, 444, *Mr. Justice White,* delivering the opinion of the Court, said: 'Equally well established is the proposition that the right to send liquors from one State into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence, that a State law which denies such a right, or substantially interferes with or hampers the same, is in conflict with the Constitution of the United States.' That the transportation is not complete until delivery to the consignee is also settled. In *Rhodes v. Iowa,* 170 U. S., 412, 420, 426, it was held that the Wilson Act was not intended to and did not cause the power of the State to attach to an interstate commerce shipment whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee. . . . In case of conflict between the powers claimed by the State and those which belong exclusively to Congress, the former must yield, for the Constitution of the United States and the laws made in pursuance thereof are 'the supreme law of the land.'" "By a long line of decisions, beginning even prior to *Leisy v. Hardin,* 135 U. S., 100, it has been indisputably determined: (*a*) That beer and other intoxicating liquors are a recognized and legitimate subject of interstate commerce; (*b*) That it is not competent for any State to forbid the transportation of such articles from one State to another; (*c*) That until such transportation is concluded by delivery to the consignee, such commodities do not become subject to State regulations, restraining their sale or disposition." This was said in the very recent case of *L. and N. R. Co. v. Cook Brewing Co.,* 223 U. S., 70 (56 L. Ed., 355). The State may indict and punish the solicitor or "drummer" who violates its statute forbidding the taking of orders for the sale of liquor to be shipped into the State, but this power does not extend so far as to include the right to declare the contract of sale of the liquor to be void, for the exercise of such a power would be to cross the line dividing the Federal from the State jurisdiction. The cases cited from the State courts and relied on to sustain the contrary of this position did not involve the ques-

tion of interstate commerce, which is essentially different from the one they discuss and decide. *Coats v. State*, 89 S. W., 838; *Parker v. State*, 85 S. W., 1155, and numerous cases cited.

But there is another view of the matter which entitles the plaintiff to recover. The prohibition of our law is against the solicitation of orders for the sale of whiskey. It is not contended that the State could prohibit the sale itself by a nonresident dealer to the defendant. That I take to be conceded. The State, therefore, has not prohibited the contract, as it could not, and the contract itself being otherwise valid, the unlawful solicitation of the order did not vitiate it. As *Judge Holmes* said, when passing upon a similar question, in *Fox v. Rogers*, 171 Mass., 546: "The supposed illegal act entered neither into the promise nor into the consideration." The contract is able to stand, in law, by itself, without any aid from the act of plaintiff's agent. The shipment of the liquor, its receipt and acceptance by the defendant, constituted a sufficient consideration for the notes, or the promise to pay for it, and the act of the agent is entirely collateral. A large number of cases sustain this view, and among them we cite the following: *Larned v. Andrews*, 106 Mass., 435; *Watrons v. Snonffer*, 32 Iowa, 58; *Bank v. Crocheron*, 5 Ala., 250; *Gregory v. Bailey*, 4 Harr. (Del.), 256. A recent case in this Court illustrates the doctrine: *Electrova Co. v. Insurance Co.*, 156 N. C., 232, citing *Cotton Press Co. v. Insurance Co.*, 151 U. S., 368, and numerous other authorities. There is another principle upon which the plaintiff's recovery can easily rest, that is, upon the ground that an *indebitatus* was created by the receipt of the liquor, from which an *assumpsit* in law arises, which will sustain an action on the case, and this right of action was not tainted or affected by the illegal act of the agent, which was collateral to it, the view taken by *Chief Justice Marshall* in *Armstrong v. Toler*, 24 U. S., 257. The law does not consider the advantage or interest of either party to the contract, but acts only from considerations of the public good. *Harrell v. Blanton*, 1 Smith's Leading Cases, 153.

It seems to me that the recent case of *Ober v. Katzenstein*, decided at the last term (160 N. C., 439), is "on all-fours" with

this case, or, at least, the principle there applied is controlling here. Plaintiff in that case, being a nonresident corporation, sued to recover a balance due on a purchase of fertilizers. Defendant alleged as a defense that plaintiff had failed to comply with Revisal, sec. 1194. By that section a foreign corporation is forbidden to do business in this State without first filing its charter in the office of the Secretary of State and otherwise complying with the requirements of that section. Defendant alleged that plaintiff had not complied with the provisions of that section and consequently could not recover on the contract of sale. A demurrer to this defense was sustained, upon the ground that the prohibition of the statute as to doing business in this State did not affect the contract, but was collateral thereto and could be availed of only by the State in an action to recover the penalty, the law not having declared the contract invalid, the Court, by the *Chief Justice,* saying: "But the statute does not invalidate either the express contract made between the parties nor indeed the implied contract raised by the receipt of the goods of the plaintiff by the defendant," citing *Tobacco Co. v. Tobacco Co.,* 144 N. C., 358. The State law could not declare the contract in this case invalid, as it is an interstate transaction.

But there is still another view of the case. The order given by defendant to the traveling agent of the plaintiff, at Hendersonville, for the liquor, did not designate any particular liquor, but, on the contrary, was for a quantity of liquor, not specifically identified or appropriated, which was to be taken from plaintiff's stock of liquors in Cincinnati, Ohio. The thing to be sold was not, therefore, identified, and the contract with respect to it was not complete until it was so taken from the mass in Cincinnati and delivered to the carrier for shipment. The contract continues to be entirely executory until the articles sold are segregated from the mass, or the thing purchased, in general terms, is taken from many of the same description in order to fill the order. This is the controlling rule and is well settled. 1 Benjamin on Sales (Bennett), 7 Am. Ed., sec. 352; Mechem on Sales, secs. 695 and 700. The same principle is fully recognized in the leading case of *Hatch v. Oil Co.,* 100

U. S., 124, where it is said: "Sales of goods not specified (or identified) stand upon a different footing, the general rule being that no property in such goods passes until delivery, because until then the very goods sold are not ascertained." We have a case exactly similar in *Blakely v. Patrick,* 67 N. C., 40 (ten buggies case), which has been frequently approved. *Atkinson v. Graves,* 91 N. C., 99; *McDaniel v. Allen,* 99 N. C., 135; *Moore v. Brady,* 125 N. C., 35. In *Blakely v. Patrick, Pearson, C. J.,* said: "In order to vest the title or ownership in any particular buggies, it was necessary to set them apart, so as to make a constructive delivery and effect an executed contract; in the absence of such identification, the agreement, as we have seen, was executory only."

Even in the view that the orders were taken and accepted at Hendersonville, N. C., the case of *Reavick v. Pennsylvania,* 203 U. S., 507, would seem to be decisively against the defendant as to the question of interstate commerce. See, also, *Eager Co. v. Burke,* 74 Conn., 534, in which the Court also refused to hold the contract of sale invalid because the solicitor of the orders had violated the local statute and was indictable.

The judgment, in my opinion, should be reversed and a new trial awarded.

JUSTICE BROWN concurs in this dissenting opinion.