ALLEN, J., concurring; WALKER and BROWN, JJ., dissenting.
This was an action begun before a justice of the (410) peace upon two notes for less than $200 each and on appeal consolidated by consent into one action. The notes were executed by the defendant to the plaintiff for whiskey bought from the plaintiff's agent. The order for the whiskey was given in Hendersonville, N.C. to the salesman of the plaintiff company, and the whiskey was shipped *Page 334 
by the latter from Cincinnati, Ohio, to Hendersonville, N.C. and delivered to defendant at the latter place, and the notes were executed there.
This was the entire evidence. The issue was, "Is the defendant debted to the plaintiff, and if so, in what sum?" His Honor instruct the jury that if they believed the evidence to answer the issue "No." The jury responded accordingly. The defendant excepted to the instruction and to the judgment, and appealed.
The point before us was expressly decided in Vinegar Co. v. Hawn,149 N.C. 355, upon an identical state of facts. The Court held that "the contract being made in Hickory, to deliver there, was illegal, and the courts of this State will not lend their aid to collect an account based on such contract. If the liquor was shipped in from another State, that was simply the method the plaintiff took to secure it for his purposes. The delivery to defendant was agreed to be made in Hickory, and was so made. The plaintiff cannot violate the law by an illegal and the courts and then ask the courts to help it to enforce such contract. When, as here, the parties are in pari delicto, the courts will help neither. If the money has been paid, it cannot be recovered unless the statute so provides (as in regard to usury, Revisal, 1951), and if not paid, the courts will not aid in the collection. It will leave the parties to their own devices," citing King v.Winants, 71 N.C. 469; Griffin v. Hasty, 94 N.C. 4 Basket v. Moss,115 N.C. 448; McNeill v. R. R., 135 N.C. 7 Oscanyan v. Arms Co.,103 U.S. 261 (which holds that it is not even necessary to plead the invalidity, it being sufficient if it appear on the evidence); Ewell v. Daggs, 108 U.S. 146. The Court further cited with approval the (411) following from Kelly v. Courter, 1 Okla. 277: "The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation." To the same purport,Walker, J., Edgerton v. Edgerton, N.C. 167.
Not only is the contract for the sale of liquor invalid, but the agent was indictable for soliciting the sale. Laws 1908, chap. 118, now Pell's Revisal, 3527a.
It was in regard to such a statute as this that the United States Supreme Court held in Delamater v. South Dakota, 205 U.S. 93, that a State "may forbid the carrying on within its borders the business of soliciting orders for liquor, although such orders may only contemplate a contract resulting from final acceptance in another State." In that caseMr. Justice White said, referring by name to Robbins v. Shelby TaxingDistrict, 120 U.S. 498; Caldwell v. North Carolina, 187 N. 682; R. R. v.Sims, 191 U.S. 441, that, the Court put out of view those *Page 335 
cases, "because they concerned the power of a State to deal with articles of interstate commerce other than intoxicating liquors, or which, if concerning intoxicating liquors, related to controversies originating before the enactment of the Wilson law. The general power of the States to control and regulate the business of dealing in or soliciting proposals within their borders for the purchase of intoxicating liquors is beyond question."
The Court further said: "The business of soliciting proposals in South Dakota was one which that State had a right to regulate, wholly irrespective of when or where it was contemplated the proposals would be accepted or whence the liquor which they embraced was to be shipped."
It is recognized, therefore, by both the State and Federal courts that the contract by which this liquor was ordered was an illegal contract, and that the fact that it was to be shipped here from Ohio did not make the contract valid. It follows that the courts will not enforce the payment of a note given in execution of an illegal contract. The proposition is so fully discussed by Judge Field in Oscanyan v. Arms Co., 103 U.S. 261, and cases there cited that further debate is unnecessary.
Where a person in this State, at the request of another, agreed to buy cotton futures for him in New York, a contract also made (412) illegal by our statutes, it was held that the person sending the order to New York for the purchase of the futures could not recover his losses. Garseed v. Sternberger, 135 N.C. 501. There the whole transaction was in New York, but the contract to do the act was made in North Carolina. This has been cited and reaffirmed in Burns v. Tomlinson, 147 N.C. 647, which held a subsequent promise to pay invalid. The Court said, "Certainly the courts could not aid the plaintiff to a recovery when our statute makes it a misdemeanor to aid directly or indirectly in making such contracts," citing also to the same effect, with approval, S. v. Clayton, 138 N.C. 732. In the latter case the Court held that it is "competent for the Legislature to provide that gambling contracts participated in by the defendant in this State, either originating or being ratified here, shall be indictable in our courts, and such contracts are not protected by the interstate commerce clause of the Federal Constitution." S. v. Clayton was also cited as authority in Rankin v. Mitchem, 141 N.C. 284.
Where a note was given in consideration of a bet on a horse race in another State, it is not enforcible here. Gooch v. Faucett, 122 N.C. 270. Here the notes were given in this State upon an illegal contract also made in this State.
No error. *Page 336